UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DE'JUAN THOMAS | : | CIVIL ACTION |
| | : | NO. 17-1595-SDD-EWD |
| VERSUS | | |
| | : | JUDGE SHELLY D. DICK |
| SALLY GRYDER, ET AL. | : | MAGISTRATE JUDGE ERIN WILDER-DOOMES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES TO SALLY GRYDER**

**NOW**, through undersigned Assistant Attorney General, comes defendant, Sally Gryder, who answers Plaintiff's First Set of Interrogatories, as follows:

**INTERROGATORIES**

**INTERROGATORY NO. 1**

Identify each person who served as your supervisor at David Wade Correctional Center from 2015 to 2017.

**ANSWER TO INTERROGATORY NO. 1:**

Brenda Acklin served as Sally Gryder's supervisor from 2015 to 2017.

**INTERROGATORY NO. 2**

Describe whether and under what circumstances supervisors check your offender time computation.

**ANSWER TO INTERROGATORY NO. 2:**

In 2015, Sally Gryder reviewed files of offenders who were coming up on their release date. If the time computation was correct, she submitted the file to her supervisor to check her work and sign off on the updated record. If Ms. Gryder found a discrepancy or error with the

1

Exhibit A

time calculation, she would figure out the discrepancy or error and update the calculation if necessary. If after figuring out the discrepancy or error the offender was still coming up on their release date, she would submit the file to her supervisor. If the discrepancy or error was unusual or she did not have all the information to verify the time calculation, Ms. Gryder consulted with her supervisor on how to proceed.

## INTERROGATORY NO. 4

Identify every individual you communicated with between May 11, 2015 to January 13, 2017 regarding De'Juan Thomas' sentence or release date.

## ANSWER TO INTERROGATORY NO. 4:

To the best of her recollection, Defendant Sally Gryder communicated with the following individuals regarding De'Juan Thomas' sentence or release date:

1. De'Juan Tomas – Plaintiff,

2. Brenda Acklin – ARDC Manager at David Wade Correctional Center,

3. Jerry Goodwin – Warden at David Wade Correctional Center, and

4. Donald Cassels, III – Orleans Parish District Attorney.

## INTERROGATORY NO. 5

Identify all statutes, regulations, policies, directives, guides, and manuals that govern your calculation of inmate release dates.

## ANSWER TO INTERROGATORY NO. 5:

1. Dept. Reg B-02-018 - Pre-Classification of Offenders;

2. Dept. Reg B-04-001 - Sentence Computation, Jail Credit, Diminution of Sentence, Violations;

3. Dept. Reg B-04-004 - Determination of Offender Class & Computation of Parole Eligibility;

    4.        Dept. Reg B-04-006 - Restoration of Good Time;

    5.        DWCC Policy Memo #03-05-002 - Awarding Good time; and

    6.        DWCC Policy Memo #03-07-002 - Restoration of Good Time.

See also the time computation worksheets identified in Defendants' First and Second Supplemental Responses to Requests for Production of Documents.

**INTERROGATORY NO. 6**

Identify all statutes, regulations, policies, directives, guides, and manuals that you use in your calculation of inmate release dates.

**ANSWER TO INTERROGATORY NO. 6:**

See Answer to Interrogatory No. 5.  Though Defendant Sally Gryder uses the information referenced in Answer to Interrogatory No. 5, she does not always refer to the documents every time she makes a calculation.  She often relies on her knowledge and experience in making calculations.

**INTERROGATORY NO. 7**

Identify all statutes, regulations, policies, directives, guides, and manuals you referred to or used in calculating De'Juan Thomas' release date.

**ANSWER TO INTERROGATORY NO. 7:**

Defendant Sally Gryder did not calculate De'Juan Thomas' initial release date. Defendant Gryder calculated Mr. Thomas' release date on four occasions.  The first time Ms. Gryder calculated Mr. Thomas' release date was on June 14, 2013.  Ms. Gryder recalculated Mr. Thomas' realse date from February 11, 2017 to May 30, 3016 after referring to Mr. Thomas' Jail Credit Letter and taking into the account the time Mr. Thomas had already served per the Jail Credit Letter.

3

The second time Mr. Gryder calculated Mr. Thomas' release date was on October 8, 2014 when she recalculated Mr. Thomas' release date from May 30, 2016 to January 31, 2016 after referring to the CTRP form dated September 30, 2014 showing good time credit Mr. Thomas had earned.

The Third time Ms. Gryder calculated Mr. Thomas' release date was on November 18, 2014 when she recalculated Mr. Thomas' release date from January 31, 2016 to November 2, 2015 after referring to the CTRP form dated November 12, 2014 showing good time credit Mr. Thomas had earned.

The fourth and final time Ms. Gryder calculated Mr. Thomas' release date was on May 11, 2015 when she recalculated Mr. Thomas' release date from June 5, 2015 to his full term release date of February 28, 2017 after referring to the amended minute, dated May 7, 2015, issued by the criminal court, who originally sentenced Mr. Thomas.

**INTERROGATORY NO. 8**

Describe all documents you obtained, used or referred to in calculating De'Juan Thomas' release date.

**ANSWER TO INTERROGATORY NO. 8:**

See Answer to Interrogatory No. 7.

**INTERROGATORY NO. 9:**

Identify all statutes, regulations, policies, directives, guides, manuals, or other sources (including identification of page or subsection) that indicate that the sequence of counts in a sentencing order should match bill of information.

4

**ANSWER TO INTERROGATORY NO. 9:**

See Answer to Interrogatory No. 5. In further answering, The Bill of Information is critical to calculating prison release dates because it contains such information as the offense date, victim information – particular for minors and/or victims of sexual offenses, and to confirm that what the offender was charged with was also what he was convicted and/or sentenced for. In addition, the sentence minutes and/or sentence order does not always include the statute the offender is sentenced under, and that information can be found on the Bill of Information.

**INTERROGATORY NO. 10**

Identify all statutes, regulations, policies, directives, guides, manuals, or other sources (including identification of page or subsection) that indicate that court minutes are controlling over a signed court order.

**ANSWER TO INTERROGATORY NO. 10:**

See Answer to Interrogatory No. 5. In further answering, DOC usually received the court minutes from the Court but the Court does not always send the Order. Furthermore, the sentence minutes and the sentence order are not always consistent so DOC or facility needs to clarify that information in those instances.

**INTERROGATORY NO. 11**

Identify all statutes, regulations, policies, directives, guides, manuals, or other sources (including identification of page or subsection) that indicate that the bill of information is relevant to offender time computation.

**ANSWER TO INTERROGATORY NO. 11:**

See Answers to Interrogatories No. 5 and 9.

**INTERROGATORY NO. 12**

Identify each time (including date, time, and identity of supervisor) a supervisor reviewed your calculation of De'Juan Thomas' sentence.

**ANSWER TO INTERROGATORY NO. 12:**

The only time Ms. Gryder's consulted with her supervisor, Brenda Acklin, was in May 2015 when she pulled Mr. Thomas' record to review for release.  When reviewing Mr. Thomas' record Ms. Gryder found what appeared to be a discrepancy between the sentence order and the Bill of Information and she brought that to Ms. Acklin's attention.  After discussing the issue with Ms. Acklin, they decided to contact the court for clarification.  At that time, Ms. Gryder contacted the Orleans Parish District Attorney's office requesting clarification on Mr. Thomas' sentence. Ms. Acklin did not actually review a calculation at that time.

**INTERROGATORY NO. 13**

Describe when you obtained a copy of the Sentencing Order for De'Juan Thomas, and from whom you obtained it.

**ANSWER TO INTERROGATORY NO. 13:**

The sentencing order was part of Mr. Thomas' Pre-Classification Packet that was part of his Master Prison Record that came with him to DWCC.  Ms. Gryder does not recall the first time she saw the sentencing order but she did review when she checked his record for release in May 2015.

**INTERROGATORY NO. 14**

Describe when you obtained a copy of the July 28, 2016 order by Judge Bosworth, and from whom you obtained it. See Ex. G.

**ANSWER TO INTERROGATORY NO. 14:**

Defendant, Sally Gryder, did not receive a copy of the July 28, 2016 Order signed by Judge Bosworth until after commencement of this litigation.

**INTERROGATORY NO. 15**

Describe when you obtained a copy of De'Juan Thomas' sentencing transcript, and from whom you obtained it. See Ex. G.

**ANSWER TO INTERROGATORY NO. 15:**

Exhibit G is not the sentencing transcript.  Ms. Gryder never saw the document that is Exhibit G until after commencement of this litigation.  As for the sentencing transcript,  a copy of the sentencing transcript was received by Brenda Acklin in the records department between December 5-8, 2016 from Mr. Thomas.  Ms. Gryder would have reviewed the transcript shortly thereafter.

**INTERROGATORY NO. 16**

Identify the date upon which you received the letter attached here as Exhibit O.

**ANSWER TO INTERROGATORY NO. :**

Defendant Sally Gryder does not recall when she received the letter referenced in this Interrogatory.

**INTERROGATORY NO. 17**

Identify the date upon which you received the letter attached here as Exhibit P.

**ANSWER TO INTERROGATORY NO. 17:**

Defendant Sally Gryder does not recall when she received the letter referenced in this Interrogatory.

**INTERROGATORY NO. 18**

Describe any mischaracterizations in Exhibit P of your interactions with Plaintiff.

**ANSWER TO INTERROGATORY NO. 18:**

1. The Court entered the amended minute on its own accord. Ms. Gryder simply requested clarification of Mr. Thomas' sentence from the Orleans Parish District Attorney's Office, specifically to ADA Don Cassells.

2. Though Ms. Gryder does not recall Mr. Thomas showing her any highlighted documents, the documents that Mr. Thomas did show her when they met in person were documents that were already in his Master Prison Record and were superseded by the amended minute entry from the criminal court.

3. Ms. Gryder typically tells offenders that do not agree with their time calculation and/or release date to order a copy of their sentencing transcript and they will use that information to calculate time.

**INTERROGATORY NO. 19**

Describe all errors or mischaracterizations you contend are reflected in the timeline provided on Page 4 of R. Doc. 1.

**ANSWER TO INTERROGATORY NO. 19:**

Ms. Gryder did not ever overrule Judge Marullo. In May 2015, Ms. Gryder found a discrepancy between the Bill of Information and the Sentence of the Court related to the courts and offenses. At that time, Ms. Gryder notified her supervisor of the discrepancy. Ms. Gryder contacted Don Cassels at the Orleans Parish District Attorney's Office seeking clarification on plaintiff's sentences. On XX date, the Criminal Court on its on accord entered an amended minute changing plaintiff's sentence. When Ms. Gryder became aware of the amended minute, she recalculated plaintiff's release date based on the information in the amended minute entry. In July 2015, Plaintiff showed Ms. Gryder the "Sentencing Order," however, the documentation

that Plaintiff showed Ms. Gryder was already in plaintiff's Master Prison Record and was superseded by the amended minute entry entered by the Criminal Court on XX date. Ms. Gryder and the records department never received a copy of the Order issued by Judge Bosworth until after litigation of this matter commenced. The timeline incorrectly states that "De'Juan receive[d] sentencing transcript [and] show[ed] it to DOC officials" on November 17, 2016, specifically, the DWCC records office did not receive the sentencing transcript until December 2016. Plaintiff sent a letter dated December 5, 2016 which included the transcript. The transcript was received in the records department sometime between December 5, 2016 – December 8, 2016. Classification was notified and a residence plan was submitted. On December 21, 2016, Plaintiff's time was recalculated to 12/21/2016 and he was classified as UNSORP which means he was a sex offender without an approved residence plan. Plaintiff could not be released from the custody of DOC/DWCC until he had an approved residence plan and a State I.D. card. Ms. Gryder processed the final paperwork for plaintiff's release on January 12, 2017. On January 13, 2017, Plaintiff was transported to the Shreveport bus station for a 7:00am trip to New Orleans.

**INTERROGATORY NO. 20**

For every request for admission denied, please explain the basis for denial.

**ANSWER TO INTERROGATORY NO. 20:**

See *Defendant, Sally Gryder's Responses to Plaintiff's First Requests for Admissions*.

***Defendant reserves the right to supplement these discovery responses, as discovery is ongoing.***

    Respectfully submitted,

    **JEFF LANDRY**
    **ATTORNEY GENERAL**

BY:   */s/ Bailey Adams Juhas*
       Bailey Adams Juhas, La. Bar No. 34234
       Assistant Attorney General
       **Louisiana Department of Justice**

Litigation Division, Civil Rights Section
1885 North Third Street, 4th Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone:   225-326-6300
Facsimile:   225-326-6495
E-mail:       JuhasB@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been forwarded to all counsel of record by e-mail and placing same in the United States Mail, postage prepaid, and properly addressed at Baton Rouge, Louisiana on this 26th day of July, 2018.

*/s/ Bailey Adams Juhas*
Bailey Adams Juhas