UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DE'JUAN THOMAS

VERSUS

SALLY GRYDER, ET AL.

CIVIL ACTION

NO. 17-1595-EWD (CONSENT)

## RULING ON MOTION FOR SUMMARY JUDGMENT

Before the court is a Motion for Summary Judgment,[1] filed by defendants, Secretary James LeBlanc, Warden Jerry Goodwin, and Sally Gryder (collectively, "Defendants") seeking dismissal of Plaintiff's claims as time-barred. Plaintiff, De'Juan Thomas ("Plaintiff") has filed an Opposition.[2] For the reasons set forth herein, the Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**.[3]

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's state law claims. Plaintiff's state law claims for violations of the Louisiana Constitution,[4] state law false imprisonment,[5] negligence,[6] and *respondeat superior*[7] are **DISMISSED** with prejudice.

---

[1] R. Doc. 13.

[2] R. Doc. 14.

[3] On March 13, 2018, the parties filed a Consent to Proceed Before a United States Magistrate Judge averring that both parties, pursuant to 28 U.S.C. § 636(c), "waive their right to proceed before a United States District Judge and consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including but not limited to the trial of the case, and order the entry of judgment in the case." R. Doc. 24. Thereafter, an Order of Reference was entered by the District Judge previously assigned to this case referring this matter to the undersigned "for the conduct of all further proceedings and the entry of judgment in accordance with 28 USC 636(c)…." R. Doc. 25.

[4] R. Doc. 1, ¶¶ 89-92.

[5] R. Doc. 1, ¶¶ 93-96.

[6] R. Doc. 1, ¶¶ 97-102

[7] R. Doc. 1, ¶¶ 112-114.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's federal claims for violation of due process pursuant to 42 U.S.C. § 1983,[8] failure to intervene,[9] and pattern and practice liability.[10]

**I.    Background**

On November 11, 2017, Plaintiff filed a Complaint asserting claims pursuant to 42 U.S.C. § 1983 as well as state law claims on the basis of Plaintiff's alleged false imprisonment.[11] Plaintiff alleges he was illegally imprisoned for 589 days past the end of his actual sentence due to the acts of Sally Gryder, an employee in the Records Department at the David Wade Correctional Center for the Louisiana Department of Corrections (the "DOC").[12] Plaintiff contends that while the DOC originally calculated his release date correctly as June 5, 2015,[13] Ms. Gryder thereafter concluded that the June 5, 2015 date was incorrect, and informed Plaintiff that he would not be released until

---

[8] R. Doc. 1, ¶¶ 75-88.

[9] R. Doc. 1, ¶¶ 103-105.

[10] R. Doc. 1, ¶¶ 106-111.

[11] R. Doc. 1. The Fifth Circuit has previously considered such claims as alleged violations of a plaintiff's due process rights. *See*, *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Douthit has alleged that the defendants imprisoned him for thirty days beyond the sentence imposed upon him without a valid commitment order. Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *Owens v. Stalder*, 638 Fed.Appx. 277, 282 (5th Cir. Jan. 6, 2016) (unpublished) ("The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired.").

[12] R. Doc. 1, ¶ 23.

[13] *See*, R. Doc. 1, ¶¶ 6 & 34.

February 28, 2017.[14] Following Plaintiff's efforts to have the June 5, 2015 release date recognized by the DOC, Plaintiff was ultimately released from custody on January 13, 2017.[15]

On January 31, 2018, Defendants filed the instant Motion for Summary Judgment seeking dismissal of all of Plaintiff's claims as prescribed.[16] Defendants contend that the one-year time period for bringing these claims began to run, at the latest, on June 5, 2015 (the date Plaintiff alleges was his correct release date)[17] and, therefore, Plaintiff's claims were already time-barred when Plaintiff filed his Complaint on November 4, 2017. In opposition to the Motion for Summary Judgment, Plaintiff agrees that the one-year time period for bringing a tort claim under Louisiana law applies to all of his claims.[18] However, Plaintiff argues that the date on which this one-year period begins to run is the date of Plaintiff's release (January 13, 2017) and, therefore, his suit was timely filed on November 4, 2017.[19]

## II. Law and Analysis

### A. Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment

---

[14] R. Doc. 1, ¶ 45. Although not directly relevant to the instant Motion for Summary Judgment, Plaintiff alleges that the change in his release date stemmed from the sequence of the three charges against him as set forth on the Bill of Information being different from the sequence of the same charges as set forth in the Judge's sentencing order and the fact that one of the charges (sexual battery) was not subject to good time credit. *See*, R. Doc. 1, ¶¶ 28-30, 9, 36). Plaintiff alleges that Ms. Gryder improperly used the sequence of charges as set forth in the Bill of Information and that the result was that his charge for sexual battery (for which he contends he was sentenced for two years) was instead switched to a sentence of five years.

[15] R. Doc. 1, ¶ 14. *See also*, R. Doc. 14-1 (Declaration of De'Juan Thomas), ¶ 28 (stating Plaintiff was released from prison on January 13, 2017.).

[16] R. Doc. 13.

[17] Defendants also argue that prescription commenced as to Plaintiff's claims against Ms. Gryder on May 11, 2015 because that date is listed by Plaintiff as the "date of the incident" in his November 30, 2016 administrative grievance ("ARP"). R. Doc. 13-1, p. 5, n. 21.

[18] R. Doc. 14-2, p. 1.

[19] R. Doc. 14, p. 4.

as a matter of law.[20] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[21] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[22] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[23] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[24] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[25] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[26]

### B. Prescriptive Period Applicable to Plaintiff's Federal Claims

In addition to Plaintiff's § 1983 due process claim stemming from his alleged over detention, Plaintiff also brings what the Court considers to be two other federal claims. Although

---

[20] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[21] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

[22] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

[23] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[24] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

[25] *Little*, 37 F.3d at 1075.

[26] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

not entirely clear, the undersigned considers Plaintiff's "Count Six - Failure to Intervene" claim, wherein Plaintiff alleges that "Defendants stood by without intervening to prevent the violation of De'Juan's constitutional rights" to be a federal claim based on bystander liability.[27] Likewise, the undersigned considers Plaintiff's "Count Seven – Pattern and Practice Liability" to be a federal claim subject to the federal common law accrual rule. Count Seven is directed to defendants Jerry Goodwin (who is alleged to be the Warden of David Wade) and Secretary James LeBlanc (the Secretary of the Louisiana Department of Corrections), both of whom are alleged to be "final policymaker[s]."[28] Plaintiff alleges that the misconduct (*i.e.*, Plaintiff's imprisonment past the correct release date) "was caused by the policies, practices, and customs of the Defendants," and that such practices "were allowed to flourish because Defendants declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents."[29] Plaintiff explicitly cites federal law in support of Count Seven,[30] and it appears that Plaintiff's assertion of "pattern and practice liability" is meant to assert *Monell* liability.[31]

"There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. It is well established that federal courts borrow the forum state's general personal injury limitations

---

[27] *See*, *Whitley v. Hanna*, 726 F.3d 631, 646-647 (5th Cir. 2013) (explaining elements of a § 1983 claim based on bystander liability).

[28] R. Doc. 1, ¶¶ 24 & 25.

[29] R. Doc. 1, ¶¶ 107 & 111.

[30] R. Doc. 1, ¶ 110 (citing *Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015)).

[31] *See*, *Hacker v. Cain*, 2016 WL 3167176, at * 10 (M.D. La. June 6, 2016) (setting out elements of "*Monell* Liability" as "(1) a policymaker; (2) an official policy; (3) a constitutional violation; and (4) a violation of that constitutional right whose 'moving force' is 'the policy or custom….'" (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

period."[32] Under Louisiana law, the prescriptive period for Plaintiff's claim is one year.[33] Although the prescriptive period for § 1983 claims is determined by state law, "the accrual date of a §1983 cause of action is a question of federal law that is *not* resolved by reference to state law."[34] Under the usual rule, "a section 1983 action generally accrues when a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'"[35] However, "[t]he running of the statute of limitations on false imprisonment is subject to a distinctive rule—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: 'Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'"[36] "[T]o determine the beginning of the limitations period… [the court] must determine when petitioner's false imprisonment came to an end."[37] Applying this rule, other federal courts in Louisiana have

---

[32] *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also*, *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v. Gusman*, 347 Fed. Appx. 66, 67 (5th Cir. 2009) (unpublished) ("The prescriptive period for a claim brought under §1983 is provided by the law of the state in which the claim arose."); *Smith v. Lavespere*, Civil Action No. 13-377, 2014 WL 4063927, at * 3 (M.D. La. Aug. 15, 2014) ("Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. In Louisiana, the applicable period of limitations is one year.").

[33] *White*, 347 Fed. Appx. at 67 (citing La. C.C. art. 3492); *Dugas*, 2017 WL 6521660, at * 5 ("Section 1983 claims are best characterized as personal injury actions; therefore, federal courts borrow the forum state's law governing the prescription of personal injury claims. In Louisiana, personal injury claims are governed by Civil Code Article 3492, which provides for a one-year prescriptive period."). *See also*, *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.").

[34] *Wallace*, 549 U.S. at 388. *See also*, *Harris*, 198 F.3d at 156-157 ("Although federal courts look to federal law to determine when a civil rights action accrues, state law supplies the applicable limitations period and tolling provisions.").

[35] *Harris*, 198 F.3d at 157 (citing *Jackson*, 950 F.2d at 265).

[36] *Wallace*, 549 U.S. at 389. *See also*, *White*, 347 Fed. Appx. at 67-68 (explaining that "'[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'") (citing *Wallace*); *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) ("The 'statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.'"). The United States Supreme Court has explained that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388.

[37] *Wallace*, 549 U.S. at 389.

6

held that the limitations period for a § 1983 claim based on false imprisonment begins to run when a claimant is released.[38]

Here, Plaintiff alleges that he was released on January 13, 2017.[39] He confirms that release date in a Declaration submitted in conjunction with his opposition to the Motion for Summary Judgment.[40] There is nothing in the evidence submitted by Defendants in support of their Motion for Summary Judgment that contradicts that Plaintiff was released on January 13, 2017.[41] Under the federal common law rule setting the accrual date, Plaintiff's one-year period to bring his § 1983 false imprisonment claim (and other federal claims stemming from the alleged false imprisonment) began to run on January 13, 2017. Plaintiff filed his suit on November 4, 2017.[42] Accordingly, Plaintiff timely filed his federal claims arising out of the alleged false imprisonment. The Court therefore DENIES Defendant's Motion for Summary Judgment to the extent Defendants seek dismissal of Plaintiff's federal claims.

---

[38] *Clark v. Lafayette Police Dept.*, Civil Action No. 18-58, 2018 WL 3602974, at * 4 (W.D. La. July 11, 2018) (collecting cases and finding plaintiff's § 1983 claims of false arrest and false imprisonment in violation of his Fourth and Fourteenth Amendment rights were prescribed because "Plaintiff's claims accrued when he was released from jail and prescribed one year later…."); *Bradley v. St. Landry Parish Sheriff's Dept.*, Civil Action No. 14-3105, 2018 WL 1936665, at * 2 (W.D. La. April 4, 2018) (plaintiff's § 1983 claims for wrongful arrest and detention were prescribed because "plaintiff's claims accrued on the date that he was released from jail and prescribed one year later."); *Dugas v. City of Ville Platte*, Civil Action No. 17-337, 2017 WL 6521660, at * 7 (W.D. La. Nov. 11, 2017) ("it is clear that the plaintiffs' [1983] claims accrued on the date that they were released from jail and prescribed one year later unless *contra non valentem* is applicable."); *White v. Gusman*, Civil Action No. 07-5779, 2008 WL 4758633 (E.D. La. Oct. 24, 2008) (§1983 claim for wrongful imprisonment prescribed one year from date of release from prison).

[39] R. Doc. 1, ¶ 14.

[40] R. Doc. 14-1, p. 4.

[41] *See*, R. Doc. 13-3, p. 12 (Second Step Response Form dated April 21, 2017) (stating that Plaintiff was released on January 13, 2017),

[42] R. Doc. 1.

## C. Prescriptive Period Applicable to Plaintiff's State Law Claims

In addition to bringing federal claims, Plaintiff also asserts claims for violations of the Louisiana Constitution,[43] state law false imprisonment,[44] state law negligence,[45] and *respondeat superior*.[46] All of Plaintiff's claims (including his state law claims) stem from Plaintiff's alleged over detention.[47] Although Plaintiff's state law claims are subject to the same one-year prescriptive period, the Louisiana Supreme Court recently rejected the rule set forth in *Wallace* regarding the date the prescriptive period for false imprisonment claims begins to run. In *Eaglin v. Eunice Police Dept.*,[48] the Louisiana Supreme Court noted that "significant differences exist between common law statutes of limitations and the civil law concept of prescription" and rejected the position that "the statute of limitations in false imprisonment cases should be delayed under [sic] the person's release because the person might not be able to file suit while incarcerated."[49] The court went on to explain that rather than delaying the accrual date for such claims until the false imprisonment ends, "such concerns are addressed through the ancient civilian doctrine of *contra non valentum agree nulla currit praescriptio*, which provides that under certain specific conditions, prescription may be suspended when a plaintiff is unable to exercise his cause of action

---

[43] R. Doc. 1, ¶¶ 89-92.

[44] R. Doc. 1, ¶¶ 93-96.

[45] R. Doc. 1, ¶¶ 97-102

[46] R. Doc. 1, ¶¶ 112-114. Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* alone is insufficient to state a claim under § 1983. *See*, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Monell*, 436 U.S. at 691). *See also*, *Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability"). Because Plaintiff has asserted a *Monell* claim (the "pattern and practice liability" claims discussed above), the undersigned considers any additional claim under the doctrine of *respondeat superior* to be based on state law.

[47] Plaintiff does not allege a negligence claim for any acts occurring *after* his date of release and explicitly alleges duty and breach related to the alleged over detention. R. Doc. 1, ¶¶ 98-100.

[48] 2017-C-1875, --- So.3d ---, 2018 WL 3154744 (La. June 27, 2018).

[49] *Id.* at * 7.

when it accrues."⁵⁰ Based on the court's determination that "prescription on [plaintiff's] false arrest and false imprisonment claims commenced on…the date of his arrest," the court found plaintiff's claims prescribed.⁵¹

Under *Eaglin*, and unlike Plaintiff's federal claims, the one-year period in which Plaintiff was required to bring his state law claims began to run on the date Plaintiff was allegedly "falsely imprisoned," *i.e.*, June 6, 2015 (the date after Plaintiff's claimed correct release date).⁵² Plaintiff filed his lawsuit on November 4, 2017, well after the one-year prescriptive period applicable to his state law claims had run. Plaintiff has not asserted that he was unable to file his claims earlier based on the doctrine of *contra non valentum*, and Plaintiff's Complaint belies any assertion that he was somehow incapable of bringing a claim while allegedly falsely imprisoned.⁵³

While Plaintiff argues in opposition to the Motion for Summary Judgment that the November 30, 2016 filing of his ARP tolled the running of the one-year prescriptive period,⁵⁴ under the *Eaglin* rule, Plaintiff's one-year period to bring his state law claims commenced to run

---

⁵⁰ *Id*.

⁵¹ *Id*. at * 8.

⁵² Per his Complaint, Plaintiff alleges that DOC officials originally calculated his adjusted release date correctly to be June 5, 2015. R. Doc. 1, ¶ 34. Defendants have not filed an answer to the Complaint denying that allegation. However, Defendants do assert in their Motion for Summary Judgment that prescription began to run on all of Plaintiff's claims on June 5, 2015, at the latest. For purposes of this Motion, the Court assumes Plaintiff is correct that his proper release date was June 5, 2015. Moreover, the language of *Eaglin* and the treatment of false arrest as a "species" of false imprisonment, *see*, n. 36, *supra*, leads the undersigned to apply the *Eaglin* rule to Plaintiff's state law claims. However, a claim of "false arrest" following by a period of "false imprisonment" (the situation in *Eaglin*) is arguably distinguishable from that set forth here, *i.e.*, where there is a period of "proper" arrest and imprisonment followed by a period of over detention. This is because the date such "over detention" actually began is not as easily determined as either the date of false arrest or the date of actual release. Had Plaintiff alleged his over detention began within the year prior to his actual release, his state law claims would apparently not be prescribed under the *Eaglin* rule.

⁵³ Throughout his Complaint, Plaintiff alleges his repeated attempts to have prison officials recognize the earlier release date. *See*, *e.g.*, R. Doc. 1, ¶ 10 (alleging that Plaintiff "set out to methodically address the situation" (*i.e.*, his imprisonment past the alleged correct release date); ¶ 43 (alleging Plaintiff "set out to methodically solve the problem.").

⁵⁴ Both parties agree that the filing of an ARP may be suspended upon the filing of a grievance and shall continue to be suspended until the final agency action. *See*, R. Doc. 13-2, ¶ 4 (citing La. R.S. § 15:1172(E)); R. Doc. 14, pp. 4-5. Both parties also agree that Plaintiff filed his ARP on November 30, 2016. R. Doc. 13-1, p. 7; R. Doc. 14, p. 2.

9

on June 6, 2015 and, absent a showing that the doctrine of *contra non valentum* applies, prescribed on June 6, 2016. Because Plaintiff filed his ARP after his state law claims prescribed, Plaintiff cannot rely on the ARP procedure to suspend prescription. Further, while Plaintiff contends that his suit is timely under the "continuing violation" doctrine,[55] the undersigned finds that *Eaglin* itself logically precludes application of a continuing tort theory to Plaintiff's state law claims because *Eaglin* presupposes the running of prescription *while* a claimant is allegedly falsely imprisoned. The Court therefore GRANTS Defendants' Motion for Summary Judgment to the extent that Defendants seek dismissal of Plaintiff's state law claims, and dismisses the state law claims with prejudice.[56]

### III.   Conclusion

For the reasons set forth herein, the Motion for Summary Judgment[57] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's state law claims. Plaintiff's state law claims for violations of the Louisiana Constitution,[58] state law false imprisonment,[59] negligence,[60] and *respondeat superior*[61] are **DISMISSED** with prejudice.

---

[55] R. Doc. 14, pp. 6-7.

[56] *See*, *Eaglin*, 2018 WL 3154744, at * 10 (reinstating district court's dismissal with prejudice of plaintiff's prescribed false arrest and false imprisonment claims). *See also*, *Rose v. Computer Sciences Corp.*, Civil Action No. 15-813, 2017 WL 2915580, at * 4 (E.D. La. July 7, 2017) (dismissing prescribed claims with prejudice under Fifth Circuit precedent as well as Louisiana state substantive law and explaining that "Louisiana courts consistently dismiss claims with prejudice when the dismissal is on the basis of prescription.") (collecting cases).

[57] R. Doc. 13.

[58] R. Doc. 1, ¶¶ 89-92.

[59] R. Doc. 1, ¶¶ 93-96.

[60] R. Doc. 1, ¶¶ 97-102

[61] R. Doc. 1, ¶¶ 112-114.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's federal claims for violation of due process pursuant to 42 U.S.C. § 1983,[62] failure to intervene,[63] and pattern and practice liability.[64]

Signed in Baton Rouge, Louisiana, on August 30, 2018.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[62] R. Doc. 1, ¶¶ 75-88.

[63] R. Doc. 1, ¶¶ 103-105.

[64] R. Doc. 1, ¶¶ 106-111.