**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DE'JUAN THOMAS** | : | **CIVIL ACTION** |
| | : | **NO. 17-1595-SDD-EWD** |
| **VERSUS** | | |
| | : | **JUDGE SHELLY D. DICK** |
| **SALLY GRYDER, ET AL.** | : | **MAGISTRATE JUDGE**<br>**ERIN WILDER-DOOMES** |

*******************************************************************

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

The non-moving parties, James LeBlanc, Jerry Goodwin, and Sally Gryder, urge this Honorable Court to deny De'Juan Thomas' *Motion for Summary Judgment*¸ record document 52, because he fails to show that there is no genuine dispute of material fact that the defendants, James LeBlanc, Jerry Goodwin, and Sally Gryder, violated his rights under the United States Constitution.

Plaintiff principally advances three (3) arguments in support of his motion. First, Plaintiff argues that Sally Gryder acted with deliberate indifference towards Plaintiff by "causelessly" seeking clarification of the May 5, 2013 sentencing order.[1] Second, Plaintiff argues that she acted with deliberate indifference by violating DOC policy.[2] Third, Plaintiff argues that defendants Goodwin and LeBlanc are subject to supervisory liability due to "widespread" examples of prisoner overdetention.[3] For the reasons discussed below and in the defendants' memorandum in

---

[1] R. Doc. 52-1, p. 6.
[2] *Id.*
[3] *Id,* pp. 9-12.

1

support of their own *Motion for Summary Judgment,*[4] however, Plaintiff has failed to establish

meet his summary judgment burden under Rule 56, and his motion should be denied.

## I.    ISSUE BEFORE THE COURT

Plaintiff initially brought federal and state law claims against the defendants.[5] Pursuant to

the Court's *Ruling* on the defendants' first *Motion for Summary Judgment,* however, only

Plaintiff's claims arising under 42 U.S.C. §1983 currently remain before the Court.[6]

The key inquiry in this question in this case, then, is whether the defendants violated

Plaintiff's due process rights by acting with deliberate indifference towards a serious risk of harm

(i.e., the risk of over detention faced by Plaintiff). For the reasons discussed further below, and in

the defendants' own *Motion for Summary Judgment,* Plaintiff's motion should be denied.

## II.    ANALYSIS

### 1.    Plaintiff is not entitled to summary judgment because his claims are barred by *Heck v. Humphrey* and its progeny

As an initial matter, the defendants submit that Plaintiff's §1983 claims are barred by the

United States Supreme Court case *Heck v. Humphrey,* which bars judgments that "would

necessarily imply the invalidity" of an offenders conviction or sentence without prior invalidation.[7]

This principle includes any §1983 action wherein success in favor of the plaintiff would

"necessarily demonstrate the invalidity of confinement or duration."[8]

In the interest of brevity, defendants refer principally to their original *Memorandum in*

*Support of Second Motion for Summary Judgment,* which outlines the reasons why Plaintiff's

---

[4] R. Doc. 57. For purposes of this memorandum, the defendants also incorporate the arguments contained in their own *Memorandum in Support,* R. Doc. 58-2.
[5] R. Doc. 1.
[6] R. Doc. 39.
[7] 512 U.S. 477 (1994).
[8] *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005).

§1983 claims are barred by *Heck*.[9] However, defendants do note that Plaintiff does nothing in the

instant motion to address the chief principle surrounding *Heck* - that a §1983 action is not the

mechanism in which to challenge the nature and duration of a prisoner's confinement.[10] As alleged

in his original *complaint*,[11] Plaintiff argues that he was illegally held 589 days past his release

date.[12] As such, Plaintiff is inherently challenging the nature and duration of his confinement, and

*Heck* applies unless Plaintiff can show that the nature and duration of his confinement "has been

reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or

called into question by a federal court's issuance of a writ of habeas corpus."[13]

Plaintiff makes no effort to show that he has previously invalidated the nature or duration

of his confinement. Because Plaintiff has failed to demonstrate or allege that the nature and

duration of his confinement has been previously invalidated, his §1983 claims are barred, and his

motion should be denied on this basis alone.

**2. Plaintiff is not entitled to summary judgment because the defendants are entitled to Qualified Immunity**

a) *Qualified Immunity Standard*

The qualified immunity defense is a familiar one, and operates to protect a public official

who is performing a discretionary task.[14] Government officials, performing discretionary

functions, "generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

---

[9] R. Doc. 57-1, pp. 8-11.

[10] *See Wilkinson*, 544 U.S. at 78 ("This Court has held that a prisoner in state custody cannot use a §1983 action to challenge 'the fact or duration of his confinement.' He must seek federal habeas corpus relief (or appropriate state relief) instead.")(internal citations omitted).

[11] R. Doc. 1, ¶1.

[12] R. Doc. 52-1, p. 4.

[13] *See Heck*, 512 U.S. at 486-487.

[14] *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995).

have known."[15] Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[16]

The Courts use a two-step method in determining whether a defendant is entitled to qualified immunity.[17] "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known."[18] The first step in this analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.[19] In the second step, the district court must determine whether the right allegedly violated was clearly established at the time of the infraction.[20] However, the sequencing of the analysis has been left to the discretion of the Court to determine which of the two prongs should be analyzed first.[21] This inquiry must be undertaken in light of the specific factual context of the case, not as a broad, general proposition; The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable official that his conduct was unlawful in the situation which he confronted.[22]

"To determine that an official is *not* entitled to qualified immunity, the court must find that every reasonable officer would have understood that the alleged conduct violated a clearly

---

[15] *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).
[16] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[17] *See Pearson v. Callahan,* 555 U.S. 223, 232, (2009)(citing *Saucier v. Katz,* 533 U.S. 194 (2001).
[18] *Gobert v. Caldwell,* 463 F.3d, 345 (5th Cir. 2006)(citing *Hope v. Pelzer*, 536 U.S. 730 (2002) and *Beltran v. City of El Paso,* 367 F.3d 299, 303 (5th Cir. 2004)).
[19] *Pearson,* 555 U.S. at 232.
[20] *Id.*
[21] *Id.* at 236.
[22] *See Id.*

established constitutional right."[23] A defendant's subjective state of mind is irrelevant on the question of whether he is entitled to qualified immunity.[24] The question of whether an official's conduct was objectively reasonable is a question of law, to be decided by this Court.[25]

"Once defendants assert the qualified immunity defense '[t]he plaintiff bears the burden of negating qualified immunity…but all inferences are drawn in his favor."[26] Specifically, a plaintiff must show that (1) the defendants committed a constitutional violation under current law; and (2) the defendants' actions were objectively unreasonable in light of the law that was established at the time of the actions complained of.[27]

### b)    *Deliberate Indifference Standard*

The deliberate indifference standard is a high one.[28] In order to establish deliberate indifference, a Plaintiff must show that a state actor knew of and disregarded an excessive risk to the Plaintiff.[29] Indeed, "the state actor's actual knowledge is critical to the inquiry," as a "failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference."[30] Importantly, negligent acts or omissions do not rise to the level of deliberate indifference.[31]  Rather, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *she must also draw the inference.*[32]

---

[23] *Brauner v. Coody,* 793 F.3d 493, 497 (citing *Lytle v. Bexar Cnty., Tex.,* 560 F.3d 404, 409 (5th Cir. 2009)).

[24] *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

[25] *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 330 F.3d 681, 687 (5th Cir. 2003)(internal citations omitted).

[26] *Brauner* at 497 (citing *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010)).

[27] *Zaunbrecher v. Gaudin,* 641 Fed.Appx. 340, 344 (5th Cir. 2016)(unpublished)(citing *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005)).

[28] *Whitley v. Hanna,* 726 F.3d 631, 641 (5th Cir. 2013)(citing *Doe v. Dall INdep. Sch. Dist.,* 153 F.3d 211, 2019 (5th Cir. 1998)).

[29] *See Id.* (citing *McClendon v. City of Columbia,* 305 F.3d 314, 326 n. 8 (5th Cir. 2002)

[30] *Id.* (citing *Farmer v. Brennan,* 811 U.S. 825, 837 (1994)).

[31] *Farmer* at 835.

[32] *Id.* at 837.

c)   *Sally Gryder*

Plaintiff argues that Gryder acted with deliberate indifference because there was "no cause" to seek clarification of the May 2013 sentencing order.[33] In such an argument, Plaintiff ignores Gryder's uncontested testimony regarding the actions that she took with respect to Plaintiff. Here, the record reflects that Gryder perceived a discrepancy between the sentencing order and the bill of information, which prompted her to contact the Orleans District Attorney's Office to inquire about the discrepancy.[34] Importantly, the summary judgment record also shows that Gryder did not change Plaintiff's release date *until* the Orleans Clerk of Court issued an amended minute entry and she received verification from the Orleans District Attorney.[35]

While Plaintiff argues that Gryder acted "causelessly," the record in fact establishes that she did not act without reason. Gryder's testimony indicates that she sought clarification because she did not want to release Plaintiff early. Had Plaintiff been sentenced to five (5) years for sexual battery, he would not have been entitled to good time, and would have been released over a year and a half too early.[36] Gryder's concern was legitimate, as the State has an interest in preventing the untimely early release of an offender. As defendant Goodwin testified, "if somebody is released in error too early, then we have to, obviously, make notifications and do a warrant, you know, issue a warrant, whatever. If he owes you more time, you got to get him picked up and let Probation and Parole know, things of that nature."[37]

It is also worth noting that defendant Gryder did not know that "seeking clarification" would lead to an erroneous minute entry. As she testified:

---

[33] R. Doc. 52-1, p. 7.
[34] R. Doc. 57-3, 53:3-54:14.
[35] R. Doc. 57-3, 53:21-54:14; 117:3-118:6.
[36] *Id*, 110:8-15.
[37] Exhibit 57-6, 16:16-22.

> I sought clarification and all they had to do was tell me – clarify that he in fact got two years and his – had they told me at the time – and not changed his minutes, I would have never recalculated his time. I think that's evident. I recalculated his time based on amended minute from Orleans Parish. I didn't have anything to do with what Orleans did.[38]

The record thus reflect that Gryder did not change Plaintiff's release date until the Orleans Clerk issued an amended minute entry *and* Gryder received verification from the Orleans District Attorney.[39] Even assuming that Gryder could have performed further investigation, her conduct in this case simply does not rise to the level of deliberate indifference, and Plaintiff's motion should be dismissed.

Plaintiff's second contention, that Gryder should be found liable simply because she deviated from DOC policy, is without merit. It is a well settled point of law that that the mere violation of a prison policy does not itself state a claim for a constitutional violation.[40] For this reason, Plaintiff has to prove that Gryder's deviation was with deliberate indifference. He has failed to do so; while Plaintiff argues with the benefit of hindsight, the summary judgment record reflects that defendant Gryder did not unreasonably act by reaching out to the Orleans District Attorney's Office or by recalculating Plaintiff's release date *after* the Orleans Clerk issued an amended minute entry.

Here, it was objectively reasonable for Gryder to seek a clarification of Plaintiff's sentence to *ensure* that she was correctly computing Plaintiff's sentence. Gryder testified that "I don't recall ever running into that, where the order of the court – or what we call Sentencing Minutes is different from Docket Master."[41] She also testified that "if there's a discrepancy maybe in the minutes or the uniform – between the minutes and the Uniform Commitment Order of in the Bill

---

[38] R. Doc. 57-3, 79:3-10.

[39] *Id*, 53:21-54:14.

[40] *See Jackson v. Cain,* 864 F.2d 1235, 1251-1252 (5th Cir. 1989).

[41] R. Doc. 57-3, 123:5-8.

of Information and the Sentencing Minutes or we need clarification, I wouldn't hesitate to ask for

clarification."[42] This, Gryder testified, is particularly true where the discrepancy would have an

effect on an offender's time.[43]

Equally important, there is no evidence that Ms. Gryder knew that the Clerk was going to

erroneously amend the minute entry. To the contrary, Gryder testified:

> I sought clarification and all they had to do was tell me – clarify that he in fact got
> two years and his – had they told me at the time – and not changed his minutes, I
> would have never recalculated his time. I think that's evident. I recalculated his
> time based on amended minute from Orleans Parish. I didn't have anything to do
> with what Orleans did.[44]

As this testimony shows, Ms. Gryder took action merely to ensure that Plaintiff was indeed

sentenced to two years for his sexual battery conviction. Importantly, the record is clear that no

recalculation was performed by Ms. Gryder until the Orleans Clerk of Court issued an amended

minute entry *and* she received an e-mail from Donald Cassels confirming the minute entry.[45]

Furthermore, Ms. Gryder testified that she believed that the amended minutes controlled in

Plaintiff's recalculation.[46] Even if this belief was erroneous or in contravention of policy, it does

not amount to deliberate indifference.

Plaintiff's motion should be denied.

d)    *James LeBlanc & Jerry Goodwin*

Plaintiff seeks to hold defendants LeBlanc and Goodwin liable under a theory of

supervisory liability. Because Plaintiff fails to show that LeBlanc and Goodwin implemented DOC

---

[42] *Id*, 42:1-6.
[43] *Id*, 42:7-17.
[44] *Id*, 79:3-10.
[45] *Id*, 117:3-118:6.
[46] *Id*, 125:22-126:15.

policies with deliberate indifference or otherwise acted with deliberate indifference, Plaintiff is not entitled to summary judgment.

Defendants first note Plaintiff's assertion that "the Department of Corrections, via Secretary LeBlanc and Warden Goodwin *in their official capacities,* should be held accountable[…]" is baseless. In this regard, Plaintiff is not entitled to recover compensatory damages from the Department of Corrections or against Defendants LeBlanc and Goodwin in their official capacities. In *Will v. Michigan Dep't of State Police,* the United States Supreme Court held that a state or state agency is not a "person" under §1983.[47] The Court also held that suits against state officials in their official capacities are, for all intents and purposes, suits against the State.[48] To the extent that Plaintiff is seeking to obtain summary judgment against defendants LeBlanc and Goodwin in their official capacities, Plaintiff is deemed to be bringing a suit against the State of Louisiana (or the DPS&C). Because the State of Louisiana or the DPS&C is not a "person" under §1983, he cannot obtain monetary relief against it, and Plaintiff's motion should be denied.

Additionally, Plaintiff's own arguments show that he is not entitled to summary judgment on the supervisory liability issue. As Plaintiff himself points out, there is no *respondeat superior* liability under §1983.[49] In order to establish a supervisor liability claim against Goodwin and LeBlanc, then, Plaintiff must establish sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries.[50] Additionally, "A supervisory official may be held liable…if…he implements unconstitutional policies that

---

[47] 491 U.S. 58, 71 (1989)("We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983.").

[48] *Id.* ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.")(citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)).

[49] R. Doc. 52-1, p. 9.

[50] *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011)(citing *Gates v. Texas Dep't of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008)).

causally result in the constitutional injury."[51] Plaintiff fails to meet his burden of proof in all regards.

First, Plaintiff fails to meet his burden because the record shows that defendant Gryder did not act with deliberate indifference. Indeed, without an underlying constitutional violation, there can be no supervisory liability.[52] For this reason alone, Plaintiff's motion against defendants LeBlanc and Goodwin should be dismissed.

Second, Plaintiff's own arguments undermine his argument for supervisory liability. For instance, Plaintiff expressly argues in his memorandum in support that defendant Gryder acted with deliberate indifference by violating DOC policy.[53] Inherent in this argument, however, is that DOC policy, if followed, would have prevented Plaintiff's over detention.[54] Even assuming *arguendo* that Gryder violated Plaintiff's rights by violating DPS&C policy (which she did not), Plaintiff fails in his burden of showing that these actions were the result of a deficient or unconstitutional DPS&C policy, and Plaintiff's motion should be denied.

Third, Plaintiff fails to show a "causal connection" between the pattern of prior misconduct and the alleged conduct at issue in this case.[55] While Plaintiff cites several statistics that he alleges establishes supervisory liability, none of them relate to the type of conduct seen here (seeking clarification of an offender's sentence). For instance, Plaintiff notes a statistic that, in 2012, a backlog of cases to have time computed resulted in an average processing delay of 110 days.[56]

---

[51] *Hinojosa v. Livingston,* 807 F.3d. 657, 668 (5th Cir. 2015)(citing *Porter,* 659 F.3d at 446).

[52] *Perniciaro v. Lea,* 901 F.3d 241, 259 (5th Cir. 2018)(citing *Rios v. City of Del Rio,* 444 F.3d 417, 425 (5th Cir. 2006)).

[53] R. Doc. 52-1, p. 8.

[54] *See* R. Doc. 52-1, p. 9 ("Accordingly, by making a 'deliberate choice' to reverse DOC Policy in a way *that resulted in Mr. Thomas' year-and-a-half overdetention[...]")(emphasis added).

[55] "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of *similar* violations is required." *Estate v. Davis v. City of N. Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005).

[56] R. Doc. 52-1, pp. 10-11.

There are, however, no allegations of a processing delay in this case, and the record actually reflects that Plaintiff's time was computed three separate times *prior* to the last calculation which changed his release date from June 2015 to February 2017; all of these recalculations occurred over a month before June 2015.[57] As such, the "backlog" statistic cited by Plaintiff has no bearing on this litigation, and does not form the basis for supervisory liability against LeBlanc and Goodwin.

Plaintiff also points to the Audit of the Louisiana Legislative Auditor, which noted that "DOC's process for calculating offender release dates is inconsistent, which can result in errors."[58] Again, however, this finding has no bearing on the alleged conduct in issue in this case. There is no assertion that Plaintiff's sentence was mathematically calculated improperly; the issue in this case surrounds the *basis* for the calculation (whether Plaintiff's sexual battery sentence was 5 years or 2 years), and whether Gryder acted with deliberate indifference by seeking clarification regarding Plaintiff's sentence, and neither of these issues are a reflection of the LLA report. For this reason, Plaintiff's reliance on this statistic is without merit.

Fourth, Plaintiff argues that supervisory liability should be imposed because there has been no discipline for employees.[59] This argument is without merit. Plaintiff offers nothing but speculation that any failure to discipline employees actually resulted in the violations of Plaintiff's rights. Importantly, Plaintiff makes no showing that any previous similar conduct (seeking clarification of an offender's sentence) of defendant Gryder herself has resulted in the over detention of offenders, much less that Warden Goodwin or Secretary LeBlanc were aware of such

---

[57] The first recalculation gave Plaintiff credit for time served. Exhibit 1, 50:21-23. The second and third recalculations gave Plaintiff Certified Treatment and Rehabilitation Program ("CTRP") and "good time" credits, which gave Plaintiff' a good time release date[57] of June 25, 2015. *Id*, 50:24-51:4. The fourth recalculation by Gryder, in May 2015, is the primary action at issue in this case. *Id.* 51:5-11.
[58] R. Doc. 52-1, p. 11.
[59] *Id*, p. 12.

misconduct and failed to discipline her. Here, Ms. Gryder testified that she did not recall making a mistake that led to an inmate being held longer than he should have been,[60] and Plaintiff does nothing to refute this point.

Because Plaintiff fails to show that any previous failures of defendants LeBlanc or Goodwin are causally connected to Plaintiff's situation or his confinement,[61] he is not entitled to summary judgment, and his motion should be denied.

## III.    CONCLUSION

For the reasons above and the reasons discussed more fully in the defendants' own *Motion for Summary Judgment,* the summary judgment record currently before the Court shows that Plaintiff is not entitled to summary judgment. Plaintiff's claims are barred by *Heck,* and the summary judgment record shows that the defendants are entitled to qualified immunity.  As such, Plaintiff's *Motion for Summary Judgment* should be denied.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    /s/ *James G. Evans*
James G. Evans
LSBA #35122
Assistant Attorney General
**Louisiana Department of Justice**
Litigation Division, Civil Rights Section
1885 North Third Street, 4th Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone:    225-326-6300
Facsimile:    225-326-6495
E-mail:        evansj@ag.louisiana.gov

---

[60] R. Doc. 57-3, 40:14-17.
[61] *See Perniciaro,* 901 F.3d at 260 (internal citations omitted).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 7th day of May, 2019, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system.

/s/ *James G. Evans*
James G. Evans