## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DE'JUAN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 3:17-cv-01595-SDD-EWD |
| | ) | |
| SALLY GRYDER, JAMES LEBLANC, JERRY GOODWIN, DOES 1-10, | ) ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff disputes several of Defendants' Material Facts. R. Doc. 57-2.

| **Defendants' Material Facts** (R. Doc. 57-2) | **Plaintiff's Response** |
|---|---|
| 1. This is an action brought by the De'Juan Thomas ("Plaintiff"), against defendants James LeBlanc, Jerry Goodwin, and Sally Gryder, employees of Louisiana Department of Public Safety & Corrections ("DPS&C"). | Undisputed. |
| 2. As a result of the Court's Ruling on defendants' first Motion for Summary Judgment, only Plaintiff's §1983 claims remain. | Undisputed. |
| 3. On January 25, 2013, Plaintiff pleaded guilty in Orleans Criminal District Court, where he was sentenced pursuant to three (3) convictions: Count 1: Sexual Malfeasance in Prison (La. R.S. §14:1341.1) – Five (5) Years; Count 2: Sexual Battery (La. R.S. §14:43.1) – Two (2) Years; Count 3: Second Degree Kidnapping (La. R.S. §14:44.1) – Five (5) Years. | Undisputed |
| 4. Upon his incarceration to David Wade Correctional Center ("DWCC"), defendant Sally Gryder, an employee of DWCC responsible for calculating offender release dates, recalculated Plaintiff' release date on four occasions. | Undisputed |
| 5. The first recalculation gave Plaintiff credit for time served. | Undisputed |
| 6. The second and third recalculations gave Plaintiff Certified Treatment and Rehabilitation Program ("CTRP") and "good time" credits, which gave Plaintiff' a good time release date of June 25, 2015. | Undisputed |

1

| | |
|---|---|
| 7. The fourth recalculation by Gryder, in May 2015, is the primary action at issue in this case. | Undisputed |
| 8. The first three recalculations that she performed cumulatively (through jail credit and diminution of sentence reductions) resulted in a release date of June 6, 2015. | Undisputed |
| 9. Gryder took note of this discrepancy, consulted her supervisor Brenda Acklin, and sought clarification by reaching out to the Orleans District Attorney's Office. | Undisputed that that is Ms. Gryder's testimony. |
| 10. On May 5, 2017 (and as Plaintiff's June release date approached), Ms. Gryder double checked Plaintiff' release date and reviewed the sentencing order and the Bill of Information, which ordered Plaintiff's charges differently. | Undisputed that that is Ms. Gryder's testimony. |
| 11. Ms. Gryder decided to seek clarification, so as to ensure that Plaintiff would not be released early. | Undisputed that that is Ms. Gryder's testimony. |
| 12. The State of Louisiana has an interest in preventing the release of offenders prior to their actual release date. | Undisputed. |
| 13. Gryder also sent an e-mail to Donald Cassels with the Orleans Parish District Attorney's Office in which she inquired about a discrepancy between the sentencing minutes and the bill of information. | Undisputed. |
| 14. She also spoke with the Assistant DA, who told her that Plaintiff got five years on the sexual battery conviction, but she still did not recalculate Plaintiff's release date. | Undisputed. |
| 15. On May 7, 2015, the minute clerk with the Orleans Parish Clerk issued a minute entry that read in pertinent part that "the minute clerk on this date, took notice that the minute entry 01/25/13 is in error. The counts are listed incorrectly within the minute entry of 01/25/13. However, the sentence listed is correct." | Undisputed. |
| 16. The amended minute entry went on to reflect that Plaintiff's sentence as the following: Count 1: Second Degree Kidnapping (La. R.S. §14:44.1) – Five (5) Years; Count 2: Sexual Malfeasance in Prison (La. §14:134.1) – Two (2) Years; Count 3: Sexual Battery (La. R.S. §14:43.1) – Five (5) Years. | Undisputed. |
| 17. This change reflected in the May 7, 2015 minutes would have fundamentally affected Plaintiff's good time release date, as a sentence for sexual battery is not eligible for any "good time" reductions, meaning that Plaintiff was no longer eligible for release in June 2015. | Undisputed. |
| 18. Under this sentencing framework, Plaintiff's correct release date would have been February 28, 2017 (his full term release date), not his good time release date of June 5, 2015. | Undisputed. |
| 19. After seeing the May 7, 2015 amended minutes, Ms. Gryder sent an e-mail to Donald Cassels with the Orleans | Undisputed. |

| | |
|---|---|
| Parish District Attorney's Office on May 11, 2015, which read:<br>Good morning – I just pulled this offender's court minutes on Docket Master read the minute entry for 5/07/15. According to the minutes, he did receive 5 years for the sexual batter and 2 for the Malfeasance. I just want to verify that with you before changing his time and informing him. I feel sure he knows his time is wrong, but he was just a few days from getting released. | |
| 20. In response to this e-mail, Mr. Cassels replied "[t]he updated minute entry is correct. I can send you a certified copy, if that would be helpful. | Undisputed. |
| 21. Ms. Gryder then recalculated Plaintiff' release date, for the fourth time, to his full term release date of February 28, 2017. | Undisputed. |
| 22. Ms. Gryder testified that she believed that the May 7, 2015 amended minutes controlled in Plaintiff's recalculation. | Undisputed that that is her testimony. |
| 23. Following his cancelled release date, Plaintiff sent Gryder a letter, requesting a meeting to "further discuss my refusal of release from this institution." | Undisputed. |
| 24. On June 26, 2015, Gryder responded to Plaintiff and informed him "[y]ou are now serving your time flat and will full-term out on 02.28.2017." | Undisputed. |
| 25. Plaintiff then responded with a letter on June 28, 2015. | Undisputed. |
| 26. On August 7, 2015, Ms. Gryder responded to Plaintiff and informed him that she did not change his sentence until after receiving written verification from the District Attorney's office and a corrected minute entry from the sentencing court. | Undisputed. |
| 27. She also informed him that "unless this office receives additional information from Orleans Parish contrary to what we have, your sentence will remain the same." | Undisputed. |
| 28. Plaintiff also wrote a letter to Warden Jerry Goodwin. | Undisputed. |
| 29. Defendant Goodwin forwarded this letter to Brenda Acklin, Gryder's supervisor, and spoke with both Gryder and Acklin about Plaintiff | Undisputed. |
| 30. Acklin drafted a response to Plaintiff which stated that "your time was adjusted correctly by Ms. Gryder and the minutes from Orleans Parish are attached for your information." | Undisputed. |
| 31. This letter was reviewed and signed by Goodwin prior to being sent to Plaintiff. | Undisputed. |
| 32. Plaintiff filed a motion for correction of illegal sentence with the Orleans District Court.<br>33. On July 28, 2016, Judge Graham Bosworth issued an order wherein the Court states in pertinent part that "the | Undisputed. |

3

| | |
|---|---|
| defendant states there is an incorrect minute entry and his sentence is incorrect. This is correct, however on January 25, 2013 this matter was corrected through a corrective minute entry." | |
| 34. Defendant Gryder testified that she did not recall seeing this this document until after litigation commenced. | **DISPUTED**. De'Juan Thomas sent the Bosworth order to Ms. Gryder in August 2016. Ex. A at ¶ 22. |
| 35. On or around November 18, 2016, Plaintiff sent a letter to defendant Gryder wherein he states that he received court documents "supporting my claims of having (two) 2 years to serve on the sexual battery charge. I will present to you the stated and time given to me on January 25, 2013." | Undisputed. |
| 36. In November 2016, Plaintiff also filed an administrative remedy procedure ("ARP") with DWCC officials, complaining that he had been over detained since his actual release date of June 15, 2015. | Undisputed. |
| 37. On December 5, 2016, Plaintiff sent a letter to Brenda Acklin, as well as a copy of the sentencing transcript. | Undisputed. |
| 38. Gryder did not realize that Plaintiff's release date should have been in June 2015 until December 2016, when she received the sentencing transcript. | **DISPUTED**. De'Juan Thomas sent the Bosworth order to Ms. Gryder in August 2016. Ex. A at ¶ 22. And he sent the sentencing transcript to Ms. Gryder in November 2016. Ex. B at 71:14-23. |
| 39. From this point, Ms. Acklin handled Plaintiff' case, except for (1) Gryder sending On December 8, 2016 e-mail to Donald Cassels requesting an updated minute entry, and (2) Gryder processing him for release in January 2017. | Undisputed. |
| 40. On December 13, 2016, Plaintiff sent a follow up letter to Ms. Acklin. | Undisputed. |
| 41. On December 14, 2016, Jesse Jimerson with David Wade's Classification Department sent an e-mail to the Division of Probation & Parole requesting that a new residence plan be approved. | Undisputed. |
| 42. On December 23, 2016, Brenda Acklin issued a first step response to Plaintiff's ARP, and informed him that his time had been recalculated, and that he was being placed in UNSORP status. | Undisputed. |
| 43. On January 3, 2017, Plaintiff's approved residence plan was sent to DWCC. | Undisputed. |
| 44. On January 6, 2017, a State ID was requested and ordered for Plaintiff, which was issued on January 6, 201744 and received on January 11, 2017. | Undisputed. |
| 45. On January 10, 2017, Gryder issued a recommendation for release memorandum. | Undisputed. |
| 46. Plaintiff was then released from DWCC on January 13, 2017. | Undisputed. |

4

| | |
|---|---|
| 47. Following his release, Plaintiff spent approximately one (1) month on parole before being released from supervision. | Undisputed. |
| 48. The very first substantive paragraph of Plaintiff's Complaint alleges that "Defendants illegally imprisoned [Plaintiff] for 589 days past the end of his sentence." | Undisputed. |
| 49. Plaintiff seeks damages, declaratory, and injunctive relief | Undisputed. |
| 50. Plaintiff could not be released unless he was eligible for diminution of sentence under Louisiana state law. | Undisputed. |
| 51. Because Plaintiff was a sex offender, he could not be released until he had an approved residence plan. | Undisputed. |
| 52. Gryder correctly computed Plaintiff's good time release date of June 5, 2015. | Undisputed, except for the time she wrongly computed it. |
| 53. Had Plaintiff not been eligible for diminution of sentence, Gryder's full term release date of February 28, 2017 would have been Plaintiff's correct release date. | Undisputed. |

Additionally, Plaintiff adds the following facts material to Defendant's Motion for Summary Judgment:

| **Plaintiff's Material Facts** | **Defendants' Response** |
|---|---|
| 54. Plaintiff sent the Bosworth order to Ms. Gryder in August 2016.[1] | |
| 55. Plaintiff sent the sentencing transcript to Ms. Gryder in November 2016. Ex. B at 71:14-23. | |
| 56. In 2012, the Louisiana DOC had a team of a dozen of its staff perform an internal review of its inmate time calculation processes. R. Doc. 52-10. | |
| 57. Secretary James LeBlanc was one of the three "champions" of the project. *Id.* at 3. | |
| 58. The review found that as of January 2012, the DOC had a "1446 backlog of cases to have time computed," resulting in an average processing delay of 110 days. *Id.* at 4. | |
| 59. As a result, the team found that in May 2012, there was an average of **2252** inmates per year who needed to be immediately released upon their time being calculated, with an average of 71.7 "Overdue days" for each inmate. *Id.* at 17-18. | |

---

[1] Ex. A at ¶ 22.

5

| | |
|---|---|
| 60. According to another DOC internal investigation, in 2017, "DPS&C had an average of **200 cases per month** considered an 'immediate release' due to these deficiencies." R. Doc. 52-12 at 4. | |
| 61. In February 2019, 231 people across the state were affected. Those people waited an average 44 days to be released after a judge ordered them free.[2] | |
| 62. The 2012 investigation found a need to "make staff accountable for the quality and quantity of work performed" and a lack of "consistency of procedures and training." R. Doc. 52-10 at 11, 26. | |
| 63. The 2017 Legislative Auditor investigation found that "DOC does not have a formalized, consistent method for calculating offender release dates." R. Doc. 52-11 at 13. | |
| 64. DOC has conceded that it needs **but has not created** a "training booklet . . . to step an employee through the time computation process to determine if the offender needs recalculating." R. Doc. 52-11 at 14. | |

                              /s/ William Most_____
                              WILLIAM MOST
                              La. Bar No. 36914
                              201 St. Charles Ave., Ste. 114, # 101
                              New Orleans, LA 70170
                              T: (504) 509-5023
                              Email: williammost@gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 21, 2019 a copy of the foregoing *Opposition to Defendants' Motion for Summary Judgment* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

                              __/s/__William Most_
                              William Most

---

[2] Emily Lane and Richard Webster, *Edwards, prison officials pledge fix to stop people being detained past their release date*. Times-Picayune (March 28, 2019).

6