UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DE'JUAN THOMAS, ) ) Plaintiff, ) v. ) ) SALLY GRYDER, JAMES LEBLANC, JERRY ) GOODWIN, DOES 1-10, ) ) Defendants. ) | 3:17-cv-01595-SDD-EWD |

**Reply in Support of Plaintiff's Motion for Summary Judgment**

Plaintiff submits this Reply in support of his Motion for Summary Judgment. R. Doc. 52.

**A. The Motion should be granted because *Heck* is only a bar to cases that imply the "invalidity of [a plaintiff's] conviction or sentence," and here Plaintiff does not challenge either his conviction or his sentence.**

In their Opposition, Defendants argue that Plaintiff's overdetention claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). R. Doc. 61 at 2-3.

But *Heck* does not apply here. That is because (as Defendants concede), the holding of *Heck* is that prisoners cannot file §1983 claims where "a judgment in favor of the Plaintiff would necessarily imply the invalidity of his **conviction or sentence**." R. Doc. 61 at 2, *citing Heck* (emphasis added).

But Defendants do not argue that Plaintiff's claims here in any way imply the invalidity of his conviction or sentence. Instead, they lift language from *Heck*-progeny cases suggesting that actions that "necessarily demonstrate the invalidity of confinement or its duration" are barred. R. Doc. 57-1 at 9.

But that language must be read in context: the cases cited by Defendants all involved disputes over how long the plaintiff *legally should have been* in prison.[1] By contrast, overdetention cases like the one at issue here do not challenge how long an inmate should have been in prison, but whether the DOC *properly carried out the legally-mandated period of detention*. We see that here in that the parties are in complete agreement that "Plaintiff's correct release date was June 5, 2015." R. Doc. 58-4 at No. 13.

1

It is for that reason – the lack of any challenge to the underlying sentence – that *Heck* should be no bar to overdetention cases. For example, in another Louisiana overdetention case, the Department of Corrections made the same *Heck* argument. It was flatly rejected last year by the Eastern District of Louisiana:

> In this case, Plaintiff does not argue that his conviction or sentence were invalid. Instead, he contends that DOC Defendants violated his constitutional rights by failing to release him from prison. **Therefore, *Heck v. Humphrey* is not applicable to this case.**

*Grant v. Gusman*, 17-cv-02797, R. Doc. 46 (E.D. La., March 27, 2018) (emphasis added). Other courts have similarly held. *Chappelle v. Varano,* 11-CV-00304 (M.D. Pa., Oct. 30, 2013) ("The conflict centers on the amount of time he was held in excess of his valid conviction and sentence. . . . Consequently, Defendants' reliance on Heck is misplaced; it does not apply to the issue in this case") (emphasis in original); *Griffin v. Allegheny Cnty. Prison,* 17-1560 (W.D. Pa., Nov. 5, 2018) ("A finding for Plaintiff based on the period he was held beyond his original sentence would not imply the invalidity of the conviction or sentence, and therefore does not trigger the application of *Heck's* favorable termination rule.")

But even if, this Court were to find that *Heck* applies to overdetention claims, it still would be no bar to this Plaintiff's particular case moving forward. That is because if *Heck* applies, it only requires that a plaintiff show that the challenged issue "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. And here, a state court tribunal did exactly that: Plaintiff brought his issue before a state tribunal, and on July 28, 2016, Judge Graham Bosworth declared that Mr. Thomas' "assertions are correct with regard to his sentence." R. Doc. 57-2 (Def's Material Facts) at No. 32. Accordingly, Defendants' *Heck* argument should be rejected.

---

[1] *Wilkinson v. Dotson*, 544 US 74 (parole eligibility); *Preiser v. Rodriguez*, 411 U. S. 475, 489 (1973) (revocation of good-time credits); *Wolff v. McDonnell*, 418 U. S. 539, 554 (1974) (revocation of good-time credits); *Edwards v. Balisok*, 520 U. S. 641, 648 (1997) (revocation of good-time credits).

2

**B.     Plaintiff's motion should be granted because Defendant Gryder acted "causelessly," which the Fifth Circuit has held to amount to deliberate indifference.**

According to clearly-established law, a prison official acts with deliberate indifference if she acts "causelessly" or "recklessly," (*Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)), or with disregard for "a known or obvious consequence of [her] action" (*Porter* at 447). Deliberate indifference standard is a very high bar in some contexts, but is more attainable in the context of overdetention. That is because in "a case such as this one, where there is no discretion and relatively little time pressure, the jailer will be held to a high level of reasonableness as to his own actions." *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976) (*en banc*).

Defendants argue in their opposition that Ms. Gryder "did not act without reason." R. Doc. 61 at 6. It is true, of course, that she had a reason. It is just that her reason was an absurd one.

Her supposed reason was a mismatch between the sequence of crimes on the DA's Bill of Information and the court's Sentencing Order. But Ms. Gryder testified that <u>absolutely nothing</u> requires those two documents to match. She testified that:

> Q.   There's literally nothing, no rule, no policy that says the order of the counts in the Bill of Information has to match the order of the counts in the judge's Sentencing Order, correct?
> A.   Correct.
> Q.   Okay. So if those two things don't match, it's no indication that there's been a violation of a rule or a policy or anything like that?
> A.   No. . . .
> Q.   So the only thing to suggest to you that there was any discrepancy here was your belief that the judge's Sentencing Order should match the Bill of Information; is that right?
> A.   That was my concern, to make sure that the counts were listed correctly.
> Q.   But you had no basis for that concern except your own belief that those two should match, right?
> A.   Correct.

R. Doc. 55-6 at 48, 58-50.

Likewise, Defendants argue that it was "objectively reasonable for Gryder to seek a clarification of Plaintiff's sentence." R. Doc. 61 at 7. But it was not "objectively reasonable" for Ms. Gryder to "seek a clarification." If someone seeks a clarification, it necessarily requires that something is unclear. But

3

here, it is undisputed that the "sentencing order for De'Juan Thomas was **clear**." R. Docs. 55-5, 58-4 at No. 16 (emphasis added). As Ms. Gryder testified:

> Q. [W]e've established this order is clear --
> A. Correct.
> Q. And you needed clarification?
> A. Correct.
> Q. So you needed clarification for a clear order?
> A. Correct.

R. Doc. 55-6 at 60. By definition, to seek "clarification" of something that is "clear" is to act causelessly, and to act causelessly is to act with deliberate indifference. *Johnson, supra*, 759 F.2d at 1238.

Finally, even if Ms. Gryder prevails entirely on the argument that should not be held liable for the first 579 days of Mr. Thomas' overdetention, she does not make any argument at all that applies to the last ten days of his overdetention. Those last ten days represent the period of time between Mr. Thomas' approved residence plan was sent to the prison (R. Doc. 57-2 at No. 43) and when Mr. Thomas was actually released (*id*. at No. 46). That residence plan was the last legal hurdle to his release. And for seven of those days, Mr. Thomas sat incarcerated waiting on a release memorandum from Ms. Gryder. R. Doc. 57-2 at 45.

But however that time is sliced, both seven and ten days are far in excess of what courts have found to be constitutionally permissible. *Barnes v. District of Columbia*, 793 F. Supp. 2d 260 (D.D.C. 2011) ("courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon set out in *McLaughlin*. . . . [E]ven a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment.")

The law is so well established that one court did a wide-ranging survey and found:

> The Court has been unable to find any case, whether within or outside of the Eleventh Circuit, in which the detainment of a properly identified individual for *days* beyond his scheduled release date was held constitutionally permissible. . . . Accordingly, based on the arguments and record currently before the Court, dismissal of Plaintiffs' over-detention claims on qualified immunity grounds would be improper.

4

*Powell v. Barrett*, 376 F. Supp. 2d 1340, 1354 (N.D. Ga. 2005).

Thus, even if one accepts the disputed fact that Ms. Gryder didn't know about Mr. Thomas' overdetention until December 2016, Ms. Gryder is still liable for taking <u>a full ten days</u> to effect Mr. Thomas' release after all the barriers to his freedom had fallen away.

**C.     Plaintiff's motion should be granted against the supervisory defendants because there is an unrebutted pattern of overdetention in Louisiana, which is the logical and admitted result of a complete lack of training or accountability for time computation staff.**

Defendants do not attempt to rebut the fact that there exists a massive pattern of the Louisiana DOC holding thousands of people past their release dates. R. Doc. 61 at 10-12. Nor do they attempt to deny that higher-ups in the DOC have known about the pattern since 2012. *Id*. Nor do they deny that there has not "discipline or adverse employment activity for DOC employees who have incorrectly computed sentences or release dates" in the last two decades.  R. Doc. 52-6 at Int. 4.

Defendants do argue, however, that the 2012 Six Sigma Report's identification of a pattern of thousands of inmates being held past their release date and the 2017 Louisiana Legislative Auditor report identifying widespread problems with time calculation are both not precisely the same as what Ms. Gryder did to Mr. Thomas. R. Doc. 61 at 10-12. But the law only requires that "the prior acts be <u>fairly similar</u> to what ultimately transpired." *Estate v. Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (emphasis added).

Furthermore, DOC time computation staff like Ms. Gryder do not receive little or nothing anything in the way of formal training for their job. In 2003, Ms. Gryder started the job "without any formal training" (R. Doc. 52-2 at 39), and in the subsequent decade-and-a-half she "maybe" had two one-day seminars, both more than ten years ago (*id*. at 21-22). On May 23, 2019, Secretary LeBlanc conceded that errors are the natural and expected outcome of having a lack of a training program for time computation staff.[2]

Accordingly, supervisory Defendants can be held accountable for Mr. Thomas' overdetention.

5

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court grant the motion for summary judgment.

Respectfully submitted,

/s/ William Most_____
WILLIAM MOST, La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2019, a copy of *Reply in Support of Motion for Summary Judgment* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

_/s/William Most_
William Most

---

[2] Once Plaintiff receives the transcript of that deposition, he will supplement the record with an excerpt.