UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DE'JUAN THOMAS,<br><br>    Plaintiff,<br>v.<br><br>SALLY GRYDER, JAMES LEBLANC, JERRY GOODWIN, DOES 1-10,<br><br>    Defendants. | )<br>)<br>)<br>)  3:17-cv-01595-SDD-EWD<br>)<br>)<br>)<br>)<br>)<br>) |

**Supplemental Depositional Testimony for Plaintiff's Motion for Summary Judgment**

This supplement adds recent deposition testimony from Secretary LeBlanc to Plaintiff's Motion for Summary Judgment, R. Doc. 52. The deposition testimony shows that Secretary LeBlanc was aware of the problem and causes of overdetention since 2012, and the DOC did not start to put together a training manual until 2017 – and that manual has still not been completed as of February 2019.

Secretary James LeBlanc testified that he is responsible for the inmates sentenced to the custody of the DOC whether they are in a state-run, parish-run, or private facility. Ex. A, Deposition of Sec. LeBlanc at 13:9-16. He affirmed that it is the legal duty of the Department of Corrections to release inmates on their release date. Ex. A, at 15:16-23. Secretary LeBlanc testified that he thinks DOC employees who calculate time would occasionally find out that an inmate is passed their release date:

```
17   Q.   Sometimes those people calculate an
18        inmate's sentence and find out that the
19        inmate is passed their release date,
20        correct?
21   A.   I would think occasionally that happens,
22        yes.
```

Ex. A, at 20:17-22. Secretary LeBlanc specifically admitted that there was a problem with a pattern of overdetention and he first learned about it in 2012:

1

```
10   Q.   Has there been a problem with releasing
11        people later than their release dates?
12   A.   There -- there has been issues, yes.
13   Q.   When did you first learn about those
14        issues?
15   A.   Well, I think 2012 probably would be the --
16        the start of it, and when I was approached
17        by Governor Jindal's group that were doing
18        the Lean Six Sigma and -- so they came to
```

Ex. A, at 22:10-18. From this report, Secretary LeBlanc learned that **thousands** of people in DOC custody were being held past their release date:

```
3    Q.   But you learned that thousands of people in
4         the custody of the Department of
5         Corrections for whatever reason were being
6         held past their release date, correct?
7    A.   I did.
```

Ex. A, at 48:3-7. Secretary LeBlanc acknowledged that this report stated that time computation took an average of 110 days, but it only about 30 days for the paperwork to get to the Department of Corrections. Ex. A, at 50:1-52:12. But no employees were fired, demoted, docked in pay, or reprimanded for this. Ex. A, at 48:8-49:4.

Secretary LeBlanc was familiar with the 2012 "Lean Six Sigma" review of the DOC's inmate time calculations processes and this was how he learned that there was a problem with inmates being help past their release date. Ex. A, at 33:6-14. The report gave recommendations of actions to take, one of which was to provide consistency of procedures and training. Ex. A, at 46:12-47:1. Secretary LeBlanc initially stated that they fulfilled this recommendation by developing a training manual. Ex. A, at 47:2-9. However, Secretary LeBlanc acknowledged that in 2017, the DOC said it was starting a training document for time computation and by early 2019 the manual was not fully completed. Ex. A, at 69:5-

70:4, 70:14-71:5. He did not know the current status of that training manual. Ex. A, at 71:23-25. Secretary LeBlanc testified that without a training manual, he could expect people to make errors that could result in inmates being held past their release dates. Ex. A, at 71:6-21.

Secretary LeBlanc knew that the problem was not resolved, even well after the 2012 report, when he was updated about the problem in 2017 and 2019. Secretary LeBlanc testified that he saw, at the time of its release, the 2017 Louisiana Legislative Audit report of the DOC's processing of inmate data, including time calculations. Ex. A, at 61:6-23. This report again stated that there were inconsistencies in the calculation of time that caused errors, and the DOC had no policies, procedures, manuals or agency-wide guidance that detailed the correct way to calculate release dates. Ex. A, at 62:22-63:1.

Secretary LeBlanc testified that at the time of its release, he reviewed and knew the "gist" of the 2019 Grant Application. Ex. A, at 54:23-55:7; 56:2-16. Secretary LeBlanc was aware of the finding that in 2017, at least 200 people per month, or about 2400 people per year, were being held past their release dates for an average of 49 days. Ex. A, at 57:6-12.

Respectfully submitted,

/s/ William Most_____
WILLIAM MOST, La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2019, a copy of *Memorandum in Support of Motion for Summary Judgment* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

_/s/William Most_
William Most

3