# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**DE'JUAN THOMAS**                                    **CIVIL ACTION NO.**

**VERSUS**                                            **17-1595-EWD**

**SALLY GRYDER, ET AL.**                              **CONSENT CASE**

## RULING[1]

Before the Court is a Motion for Summary Judgment[2] filed by plaintiff, De'Juan Thomas

("Plaintiff") and a Second Motion for Summary Judgment[3] filed by defendants, James LeBlanc

("Secretary LeBlanc"), Jerry Goodwin ("Warden Goodwin"), and Sally Gryder ("Ms. Gryder")

(collectively, "Defendants").[4]   Both Motions are fully briefed.[5]   On August 12, 2019, the Court

conducted a hearing on both Motions and took the Motions under advisement.   For the reasons set

forth herein, the Court denies Plaintiff's Motion for Summary Judgment[6] and grants in part

---

[1] On March 13, 2018, the parties filed a Consent to Proceed Before a United States Magistrate Judge averring that both parties, pursuant to 28 U.S.C. § 636(c), "waive their right to proceed before a United States District Judge and consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including but not limited to the trial of the case, and order the entry of judgment in the case." R. Doc. 24.  Thereafter, an Order of Reference was entered by the District Judge previously assigned to this case referring this matter to the undersigned "for the conduct of all further proceedings and the entry of judgment in accordance with 28 USC 636(c)...." R. Doc. 25.

[2] R. Doc. 52.

[3] R. Doc. 57.

[4] R. Doc. 1, ¶¶ 23-25.  Plaintiff also names "Does 1 to 10" but has never identified or served these defendants.  R. Doc. 1, ¶ 26.

[5] In response to Plaintiff's Motion for Summary Judgment, Defendants filed an Opposition, Plaintiff filed a Reply, Plaintiff filed a Supplement, and Defendants filed an opposition to the supplement.  R. Docs. 61, 68, 71, 72.  In response to Defendants' Second Motion for Summary Judgment, Plaintiff filed an Opposition and Defendants filed a Reply.  R. Docs. 62, 65.  On November 1, 2019, Plaintiff filed a Motion for Leave to File Supplement (the "Motion for Leave").  R. Doc. 84.  By the Motion for Leave, Plaintiff seeks to provide the Court with copies of two opinions recently issued by the Eastern District of Louisiana and to "explain[] their significance."  R. Doc. 84-1, p. 1.  The Court is aware of the opinions in *Traweek v. Gusman*, Civil Action No. 19-1384, 2019 WL 5430590 (E.D. La. Oct. 23, 2019) and *Bryant v. Louisiana Dept. of Public Safety and Corrections*, Civil Action No. 19-10324, R. Doc. 21, United States District Court, Eastern District of Louisiana.

[6] R. Doc. 52.

Defendants' Second Motion for Summary Judgment.[7]  Specifically, the Court finds that Ms. Gryder is entitled to qualified immunity for the time period of June 5, 2015 through August 17, 2016 and that Defendants are entitled to summary judgment dismissing "Count Seven – Pattern and Practice Liability," as well as Plaintiff's claim for injunctive relief.  Additionally, the Court dismisses with prejudice Plaintiff's claims against unidentified "Does 1-10," as well as any official capacity claims for monetary damages against Defendants based on the agreement of counsel during the August 12, 2019 motion hearing.[8]

Considering this Ruling, a separate Order setting remaining pretrial deadlines and a trial date will issue.

## I.    Background

On November 11, 2017, Plaintiff filed a Complaint asserting claims pursuant to 42 U.S.C. § 1983, as well as state law claims based on Plaintiff's alleged false imprisonment.[9]  Plaintiff alleges he was illegally imprisoned for 589 days past the end of his actual sentence due to the acts of Sally Gryder, an employee in the Records Department at the David Wade Correctional Center ("DWCC") for the Louisiana Department of Corrections (the "DOC").[10]  Plaintiff alleges that while the DOC originally calculated his release date correctly as June 5, 2015,[11] Ms. Gryder thereafter concluded that the June 5, 2015 date was incorrect based on a discrepancy between the

---

[7] R. Doc. 57.

[8] *See*, R. Doc. 75.  *See*, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

[9] R. Doc. 1.  The Fifth Circuit has previously considered such claims as alleged violations of a plaintiff's due process rights.  *See*, *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Douthit has alleged that the defendants imprisoned him for thirty days beyond the sentence imposed upon him without a valid commitment order.  Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *Owens v. Stalder*, 638 Fed.Appx. 277, 282 (5th Cir. Jan. 6, 2016) (unpublished) ("The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired.").

[10] R. Doc. 1, ¶ 23.

[11] *See*, R. Doc. 1, ¶¶ 6 & 34.

Bill of Information and the state court's Sentencing Order, and informed Plaintiff that he would not be released until February 28, 2017.[12]

On August 31, 2018, Plaintiff's state law claims were dismissed with prejudice as prescribed.[13]  With respect to Plaintiff's federal claims, this Court explained that:[14]

> In addition to Plaintiff's § 1983 due process claim stemming from his alleged over detention, Plaintiff also brings what the Court considers to be two other federal claims.  Although not entirely clear, the undersigned considers Plaintiff's "Count Six - Failure to Intervene" claim, wherein Plaintiff alleges that "Defendants stood by without intervening to prevent the violation of De'Juan's constitutional rights" to be a federal claim based on bystander liability.[15]  Likewise, the undersigned considers Plaintiff's "Count Seven – Pattern and Practice Liability" to be a federal claim subject to the federal common law accrual rule.  Count Seven is directed to defendants Jerry Goodwin (who is alleged to be the Warden of David Wade) and Secretary James LeBlanc (the Secretary of the Louisiana Department of Corrections), both of whom are alleged to be "final policymaker[s]."[16]  Plaintiff alleges that the misconduct (*i.e.*, Plaintiff's imprisonment past the correct release date) "was caused by the policies, practices, and customs of the Defendants," and that such practices "were allowed to flourish because Defendants declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents."[17]  Plaintiff explicitly cites federal law in support of Count Seven,[18] and it appears that Plaintiff's assertion of "pattern and practice liability" is meant to assert *Monell* liability.[19]

---

[12] R. Doc. 1, ¶ 45.

[13] *See*, R. Doc. 39.

[14] R. Doc. 39, pp. 4-5 (emphasis added).

[15] *See*, *Whitley v. Hanna*, 726 F.3d 631, 646-647 (5th Cir. 2013) (explaining elements of a § 1983 claim based on bystander liability).

[16] R. Doc. 1, ¶¶ 24 & 25.

[17] R. Doc. 1, ¶¶ 107& 111.

[18] R. Doc. 1, ¶ 110 (citing *Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015)).

[19] *See*, *Hacker v. Cain*, 2016 WL 3167176, at * 10 (M.D. La. June 6, 2016) (setting out elements of "*Monell* Liability" as "(1) a policymaker; (2) an official policy; (3) a constitutional violation; and (4) a violation of that constitutional right whose 'moving force' is 'the policy or custom….'" (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

The parties agree that on January 23, 2013, Plaintiff pleaded guilty in Orleans Criminal District Court and was sentenced as follows: (1) Count 1: sexual malfeasance in prison – five years; (2) Count 2: sexual battery – two years; and (3) Count 3: second degree kidnapping – five years.[20]  During his incarceration at DWCC, Plaintiff's sentence was recalculated by Ms. Gryder on four occasions.  The first recalculation gave Plaintiff credit for time served, while the second and third recalculations gave Plaintiff Certified Treatment and Rehabilitation Program ("CTRP") credits and "good time" credits.[21]  The result of these first three recalculations (based on time served, CTRP credit, and good time credits) resulted in a release date of June 5, 2015.[22]

The parties further agree that in May 2015, Ms. Gryder recalculated Plaintiff's sentence a fourth time.  This fourth recalculation is the basis for the instant lawsuit.[23]  Ms. Gryder testified that in May of 2015 she was "double checking" Plaintiff's release date prior to his anticipated June 2015 release and sought clarification after she noticed that the Bill of Information and Sentencing Order ordered Plaintiff's charges differently.[24]  It is undisputed that Ms. Gryder thereafter sent an

---

[20] R. Doc. 62-1, p. 1.  La. R.S. § 134.1(A) provides "It shall be unlawful and constitute malfeasance in office for any of the following persons to engage in sexual intercourse or any other sexual conduct with a person who is under their supervision and who is confined in a prison, jail, work release facility, or correctional institution, or who is under the supervision of the division of probation and parole: (1) A law enforcement officer. (2) An officer, employee, contract worker, or volunteer of the Department of Public Safety and Corrections or any prison, jail, work release facility, or correctional institution."  La. R.S. § 43.1 sets out the offense of sexual battery.  La. R.S. § 44.1 sets out the offense of second degree kidnapping.

[21] R. Doc. 62-1, p. 1.

[22] R. Doc. 62-1, pp. 1-2 & p. 5.  Although Defendants' Statement of Undisputed Material Facts asserts that "June 6, 2015" was Plaintiff's correct release date following the first three recalculations, Defendants admitted in their Answer that Plaintiff was entitled to be released on June 5, 2015 once credit for time served, CTRP, and good time were considered.  *See*, R. Doc. 1, ¶ 5 and R. Doc. 46, p. 3.

[23] R. Doc. 62-1, p. 2.

[24] While the Sentencing Order listed "Count 2, Violation of RS 43.1 Sexual Battery," the Bill of Information listed sexual battery as Count 3.  *Compare*, R. Doc. 57-24 & 57-23.  The Sentencing Order further set out a sentence of five years "as to counts 1 & 3" and two years "as to count 2."  R. Doc. 57-24.  Ms. Gryder testified that:

> I realized on the Bill of Information the sexual battery was listed as count three.
> The kidnapping was count one.  Count two was the malfeasance and sexual battery
> was the count three and after looking at the sentencing and the way they listed the
> counts and they – then went on – counts one and three, five years.  Count two,
> two years.  Well, in my mind, the count three on the bill was sexual battery, so

email to the Orleans Parish District Attorney's Office inquiring about the discrepancy and spoke with the Assistant DA, who informed her that Plaintiff was sentenced to five years on the sexual battery conviction.[25] On May 7, 2015, an Amended Minute Entry was entered on the criminal docket which read, in part: "The Defendant pled guilty and was sentenced on 1/25/13 as to…Count 3, R.S. 14:43.1 (5 years, D.O.C.)." After seeing the May 7, 2015 Amended Minute Entry, Ms. Gryder again contacted the Orleans Parish District Attorney's Office to confirm Plaintiff was sentenced to five years for sexual battery, and on May 11, 2015, the Assistant DA responded "The updated minute entry is correct. I can send you a certified copy, if that would be helpful."[26] Ms. Gryder then recalculated Plaintiff's release date to be February 28, 2017.[27] It is undisputed that sexual battery is not subject to any good time reductions and that if Plaintiff had been sentenced to five years for sexual battery, his release date would have been February 28, 2017.[28]

Following this fourth recalculation of Plaintiff's release date, the parties agree that Plaintiff sent letters to Ms. Gryder and Warden Goodwin objecting to the February 28, 2017 release date; that Warden Goodwin spoke with Ms. Gryder and her supervisor, Brenda Acklin, regarding Plaintiff's release date; and that a letter dated July 28, 2015 and signed by Warden Goodwin was issued to Plaintiff stating: "Your time was adjusted correctly by Mrs. Gryder and the minutes from Orleans Parish are attached for your information."[29] Thereafter, Plaintiff filed a Motion for

---

that's when I discussed with Brenda that we need to get clarification, I believe, to make sure, because sexual battery – he had to serve all of it.

R. Doc. 57-3, p. 53:4-15.

[25] R. Doc. 62-1, p. 2.

[26] R. Doc. 62-1, p. 3; R. Doc. 57-10.

[27] Ms. Gryder testified that she believed the May 7, 2015 minute entry overrode the previous Sentencing Order. R. Doc. 57-3, pp. 125:19-126:15.

[28] R. Doc. 62-1, p. 2.

[29] R. Doc. 62-1, p. 3; R. Doc. 57-12, p. 2.

Correction of Illegal Sentence with the Criminal District Court, and on July 28, 2016, that court issued an order (the "July 2016 Order") stating:

> This Motion was received by the District Court and is denied as being moot. The defendant states there is an incorrect minute entry and his sentence is incorrect. This is correct, however on January 25, 2013 this matter was corrected through a corrective minute entry.
>
> The sentence as corrected is for count one La. R.S. 14:44.1 Second Degree Kidnapping, the defendant received five (5) years in the Department of Corrections. For count two (2) La. R.S. 14:43.1 Sexual Battery, the defendant received two (2) years in the Department of Corrections. For Count Three (3) La. R.S. 14:43.1(C)(1) [sic], Second Degree Kidnapping, the defendant received a sentence of five (5) years in the Department of Corrections. All sentences are to run concurrently and with all time owed to the state.
>
> The defendant's assertions are correct with regard to his sentence, however the incorrect entries have been amended with the correct minute entries. As such this motion is denied as being moot.[30]

While Ms. Gryder testified that she did not see the July 2016 Order until litigation commenced,[31] Plaintiff has filed a Declaration stating that he sent the July 2016 Order to Ms. Gryder on August 17, 2016.[32] It is undisputed that on December 5, 2016, Plaintiff sent a letter to Brenda Acklin, as well as a copy of the sentencing transcript.[33] Ms. Gryder testified that she realized that Plaintiff should have been released in June 2015 when she received the sentencing transcript in "early December, 2016."[34]

---

[30] R. Doc. 62-1, pp. 3-4; R. Doc. 57-13. Per the Criminal Docket, the 1/25/13 docket entry lists count two as R.S. 14:43.1 (sexual battery) and states "as to count two, 2 years...." R. Doc. 57-25.

[31] R. Doc. 57-3, p. 74:15-18. Plaintiff filed his Complaint on November 4, 2017. R. Doc. 1.

[32] R. Doc. 62-2, p. 3, ¶ 22.

[33] R. Doc. 62-1, p. 4.

[34] R. Doc. 57-3, p. 78:16-22. Plaintiff testified that after he received the sentencing transcript in November of 2016, he sent a copy to Ms. Gryder. R. Doc. 62-3, p. 1. In his response to Defendants' Statement of Undisputed Material Facts, Plaintiff asserts that he sent the sentencing transcript to Ms. Gryder in November 2016.

Following receipt of the sentencing transcript, it is undisputed that Ms. Gryder sent an email to the Assistant DA requesting an updated minute entry[35] and processed Plaintiff for release in January 2017.[36] An employee with DWCC requested approval of a new residence plan for Plaintiff on December 14, 2016, and an approved residence plan was sent to DWCC on January 3, 2017.[37] On January 6, 2017, a State ID was requested and ordered for Plaintiff, and the ID was issued on January 6, 2017 and received on January 11, 2017.[38] Plaintiff was released from DWCC on January 13, 2017 and spent approximately one month on parole before being released from supervision.[39]

## II.     Law and Analysis

### A.  Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[40] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[41] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the

---

[35] A 12/20/16 docket entry states "as to count 3, RS 14:43.1(c)(1), 2 years…." R. Doc. 57-25.

[36] R. Doc. 62-1, p. 4.

[37] R. Doc. 62-1, p. 4.  It is undisputed that Plaintiff could not be released until he had an approved residence plan.  R. Doc. 62-1, p. 5.

[38] R. Doc. 62-1, p. 4.

[39] R. Doc. 62-1, pp. 4-5.

[40] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[41] *Celotex Corp.*, 477 U.S. at 322.

non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[42]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[43]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[44]  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[45]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[46]

### B.  Plaintiff's Claims are not *Heck* Barred

Defendants assert that Plaintiff's claims are barred pursuant to *Heck v. Humphrey*.[47]  In *Heck*, the United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or imprisonment, or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a claimant must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas."[48]  "Thus," the Court explained, "the district court

---

[42] *Anderson*, 477 U.S. at 248.

[43] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[44] *Celotex Corp.*, 477 U.S. at 323.

[45] *Little*, 37 F.3d at 1075.

[46] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[47] 512 U.S. 477 (1994).

[48] 512 U.S. at 486-487.  *See also*, *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) ("the Court unequivocally held that unless an authorized tribunal or executive body has overturned or otherwise invalidated the plaintiff's

must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity if his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[49]  Conversely, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."[50]

The "favorable termination" requirement of *Heck* prohibits a criminal defendant's collateral attack on the defendant's conviction or sentence.[51]  Here, however, Plaintiff does not seek to collaterally attack either his conviction or his sentence.  Instead, *all* parties agree that on January 23, 2013, Plaintiff pleaded guilty in Orleans Criminal District Court and was sentenced as follows: (1) Count 1: sexual malfeasance in prison – five years; (2) Count 2: sexual battery – two years; and (3) Count 3: second degree kidnapping – five years.[52]  The parties further agree that Plaintiff's correct release date was June 5, 2015.[53]  Nothing in the instant action would invalidate either Plaintiff's conviction or sentence,[54] and Defendants cite the Court to no cases in which the

_____

conviction, his claim 'is not cognizable under [section] 1983.'  Because Randell is seeking damages pursuant to § 1983 for unconstitutional imprisonment and has not satisfied the favorable termination requirement of *Heck*, he is barred from any recovery and fails to state a claim upon which relief may be granted.").

[49] 512 U.S. at 487.

[50] *Id.  See also*, *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

[51] *See, Heck*, 512 U.S. at 484-485 ("This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack.").

[52] R. Doc. 62-1, p. 1.

[53] *See, supra*, n. 22.

[54] *See, e.g., Chappelle v. Varano*, 4:11-cv-00304, 2013 WL 5876173, at * 13 (M.D. Pa. Oct. 30, 2013) (plaintiff's § 1983 action for damages where parole board recalculated plaintiff's maximum sentence to be July 14, 2009 and defendants released plaintiff on either July 30 or 31, 2009 was not barred by *Heck* because "the Plaintiff does not dispute the validity of his conviction or his corresponding sentence at all.  The conflict centers on the amount of time he was held in excess of his valid conviction and sentence.  The disputed period of confinement is both temporally and legally separate from the Plaintiff's actual conviction and sentence.  A finding for Plaintiff under § 1983 based on

unique fact pattern at issue here was considered.[55]  Accordingly, the Court finds that Plaintiff's

claims are not *Heck* barred.[56] [distinguish Bryant]

### C. Ms. Gryder is Entitled to Qualified Immunity for the Period of June 5, 2015 through August 17, 2016; Ms. Gryder is not Entitled to Qualified Immunity for the Period of August 18, 2016 through January 13, 2017

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that

(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were

objectively unreasonable in light of clearly established law at the time of the violation."[57]  An

---

the period he was held beyond his original sentence would not imply the invalidity of the conviction or sentence, and therefore does not trigger the application of the favorable termination rule.") (internal citation omitted); *Griffin v. Allegheny County Prison*, Civil Action No. 17-1580, 2018 WL 6413156, at * 4 (W.D. Pa. Nov. 5, 2018) (same).

[55] R. Doc. 65, pp. 2-3, n. 10-12.  Defendants cite cases in which a claimant was currently imprisoned and sought immediate release or damages based on alleged constitutional violations.  Defendants also cite cases involving § 1983 actions by formerly incarcerated individuals based on alleged imprisonment longer than was proper which were barred by *Heck*.  *See*, *Whitehurst v. Reece*, Civil Action No. 1:06cv393, 2009 WL 2757203 (E.D. Tex. Aug. 26, 2009) (formerly incarcerated plaintiff sought damages based on allegation that he was imprisoned longer than he should have been because defendants took improper actions which prevented him from receiving credit towards his federal sentence for time he spent incarcerated in county jail); *Humphrey v. Stephens*, No. A-14-CA-231-LY, 2014 WL 1319188 (W.D. Tex. March 31, 2014) (former prisoner's 1983 action dismissed as *Heck*-barred where plaintiff alleged that defendants miscalculated his release date and thereby over-detained him by 14 days); *Carlisle v. Normand*, Civil Action No. 16-3767, 2017 WL 4918997 (E.D. La. Oct. 31, 2017) (plaintiffs challenged the manner in which drug court was conducted and alleged excessive sentences were imposed; "Plaintiffs allege that Drug Court violated their constitutional rights by imprisoning them without due process, in the form of probation sanctions, contempt convictions, and time spent waiting. An award of damages to compensate for either the confinement itself or the alleged violations of due process that led to the confinements would necessarily imply that the confinements were invalid. *Heck* requires Plaintiffs to assert the invalidity of the confinements elsewhere before suing for damages."). Plaintiff's suit here does not involve any challenge to his conviction or sentence (because all parties agree on Plaintiff's conviction and proper sentence).  Instead, Plaintiff seeks damages for the time period *after* his conviction and sentence (*i.e.*, the amount of time Plaintiff was held in excess of his valid conviction and sentence), a time period for which *Heck* is not implicated.  *See*, *Heck*, 512 U.S. at 487 ("But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed…..").  *See also*, *Traweek*, 2019 WL 5430590, at * 6 (finding no *Heck* bar where plaintiff challenged "neither his conviction nor the length of his sentence" and instead alleged constitutional violations based on "his jailers' failure to timely process his release following his court-ordered time-served judgment."), and at * 5 ("The constitutional violation he advances here is that he was imprisoned 20 days past his release date; he does not take issue with his criminal judgment or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release <u>after</u> he had served his sentence.").

[56] *Compare*, *Bryant v. Louisiana Dept. of Public Safety and Corrections*, Civil Action No. 19-10324, R. Doc. 21, United States District Court, Eastern District of Louisiana (finding plaintiff's claims *Heck* barred where plaintiff alleged defendants failed to properly credit good time credit when calculating plaintiff's release date).  Unlike *Bryant*, the parties here all agree regarding Plaintiff's correct release date.

[57] *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)).

official's conduct violates clearly established law where, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[58]  However, "[a]n official that violates a constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable."[59]

"There is a clearly established right to timely release from prison" and "a jailer has a duty to ensure that inmates are timely released…."[60]  The Fifth Circuit has found that "'[w]hile not a surety for the legal correctness of a prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office.  Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.'"[61]  Despite the defense of qualified immunity, "[i]f [the jailer] negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable."[62]  Accordingly, "the issue is whether [Gryder's] actions, in light of the duty to ensure [Plaintiff's] timely release from prison, were objectively unreasonable."[63]

Plaintiff argues that Ms. Gryder is liable because her actions were taken "causelessly" and therefore were deliberately indifferent.  In *Johnson v. Treen*,[64] the Fifth Circuit explained that

---

[58] *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

[59] *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018).

[60] *Porter*, 659 F.3d at 445.

[61] *Id.* (citing *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir.1969) (internal citations and footnote omitted).  *See also*, *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976) (en banc) (prisoner held for an additional month because records were not updated to reflect release notice).

[62] *Porter*, 659 F.3d at 446 (quoting *Bryan*, 530 F.2d at 1215).

[63] *Id.* at 446.  The Fifth Circuit presented this formulation in the context of a discussion of the liability of the Commissioner of the Mississippi Department of Corrections (*i.e.*, an individual more closely akin to Goodwin and LeBlanc here).

[64] 759 F.2d 1236, 1238 (5th Cir. 1985).

"[t]he legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants" and that:

> Wanton means reckless—without regard to the rights of others.... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.[65]

Plaintiff contends that Ms. Gryder's action of seeking "clarification of a clear order" meets this definition of causelessly (reasoning that there is no cause to seek clarification if something is clear). Plaintiff relies on Ms. Gryder's deposition testimony wherein she agreed that the Sentencing Order was "clear"[66] and that there was no rule that required the counts in the Bill of Information to match the order of the counts in the Sentencing Order. Plaintiff contends that "Ms. Gryder was <u>by definition</u> acting causelessly in her efforts to resolve a mismatch between two documents that did not have to match. And she was <u>by definition</u> acting causelessly in her efforts to seek 'clarification' of a 'clear order.'"[67] The Court disagrees.

The Fifth Circuit has recognized that a jailer is "under relatively little time pressure" and "has the means, freedom, and the duty to make necessary inquiries."[68] "[A] defense of official

---

[65] *Johnson*, 759 F.2d at 1238 (quoting *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.Ct. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983)).

[66] R. Doc. 52-1, pp. 7-8.

[67] R. Doc. 52-1, p. 8 (emphasis supplied in original).

[68] *See, Douthit v. Jones*, 619 F.2d 527, 535 (5th Cir. 1980) (quoting *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968) ("A jailer, unlike a policeman, acts at his leisure. He is not subject to the stresses and split second decisions of an arresting officer, and his acts in discharging a prisoner are purely ministerial. Moreover, unlike his prisoner, the jailer has the means, the freedom, and the duty to make necessary inquiries. While not a surety for the legal correctness of a prisoner's commitment, he is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.") (internal citations omitted) and *Bryan*, 530 F.2d at 1214 ("where there is no discretion and relatively little time

immunity is available to a jailer who has acted in reasonable good faith,"[69] and "the Fifth Circuit has recognized that a determination of whether a jailer violates the Due Process Clause by unduly detaining an individual depends on 'the context of this case.'"[70] Here, although Plaintiff disagrees that Ms. Gryder had sufficient cause to seek clarification of Plaintiff's sentence, it was objectively reasonable for Ms. Gryder to do so. It is undisputed that the Bill of Information and the Sentencing Order list the charges differently. If Plaintiff had been sentenced to five years (rather than two) for sexual battery, his correctly computed sentence would have resulted in a release date of February 28, 2017. The parties agree that the Defendants have an obligation to ensure that prisoners are not released early.[71]

Ms. Gryder's alleged failure to follow DOC policy requiring her to recognize that the Sentencing Order controlled over the subsequently amended minute entry does not dictate a different result. Because it was not objectively unreasonable for Ms. Gryder to seek clarification in the first place, it was not objectively unreasonable for Ms. Gryder to rely on that clarification once received. Moreover, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right"[72] and "negligent conduct does not implicate the

---

pressure, the jailer will be held to a high level of reasonableness as to his own actions. If he negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable.").

[69] *Bryan*, 530 F.2d at 1214.

[70] *Grant v. Guzman*, Civil Action Case No. 17-2797, 2018 WL 1532960, at * 12 (E.D. La. March 29, 2018) (quoting *Douthit*, 619 F.2d at 532)

[71] R. Doc. 62-1, p. 2.

[72] *Lewis v. Secretary of Public Safety and Corrections et al.*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right. The district court did not err in granting summary judgment as to these claims.") (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'" (quoting *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986))). *See also*, *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam) (recognizing that "[o]ur case law is clear ... that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met")).

due process clause."[73]  Here, where the amended minute entry and confirmation from the DA occurred in response to Ms. Gryder's request for clarification, it would be especially inconsistent to require that Ms. Gryder continue to rely on the earlier Sentencing Order, and the Court finds that constitutional minima are met where Ms. Gryder sought to be *more* conscientious rather than less with respect to her calculation of Plaintiff's release date.[74]

Although the Court finds that Ms. Gryder's action of seeking clarification and thereafter recalculating Plaintiff's release date a fourth time were objectively reasonable, there is a genuine issue of material fact regarding the date on which Ms. Gryder knew that this fourth recalculation was based on inaccurate information.  While Ms. Gryder testified that she did not see the July 2016 Order until litigation commenced,[75] Plaintiff has filed a Declaration stating that he sent the July 2016 Order to Ms. Gryder on August 17, 2016.[76]  Plaintiff was not released until almost five months after he allegedly provided Ms. Gryder with official, corrected information.  In *Whirl*, the Fifth Circuit considered the liability of a jailer who had held plaintiff in jail almost nine months after dismissal of indictments against him.  Notice of the dismissal was sent to the sheriff's office,

---

[73] *Salas v. Carpenter*, 980 F.2d 299, 307 (5th Cir. 1992).  *See also*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.").

[74] In contrast, in *Traweek*, there was no indication that any individual defendant reasonably sought clarification of what the defendant believed to be unclear underlying information when computing plaintiff's release date.  Instead, plaintiff alleged that defendants' administrative delays caused plaintiff to be over detained past his release date despite defendants' knowledge that plaintiff was entitled to be immediately released.  *See*, 2019 WL 5430590, at * 7-13.  Here, Plaintiff's alleged over detention for the time period of June 5, 2015 through August 17, 2016 was due not to alleged administrative delays but instead due to proper sentencing calculations based on objectively inconsistent underlying information.  As discussed herein, the Court finds that Ms. Gryder is entitled to qualified immunity for the period she sought clarification regarding the inconsistency.  However, and consistent with the result in *Traweek*, the Court finds that beginning August 18, 2016 there is a genuine issue of material fact regarding receipt of the correct underlying information, and Plaintiff arguably continued to be held despite Ms. Gryder's alleged knowledge of that correct underlying information.  Accordingly, for the period of August 18, 2016 through January 13, 2017 Ms. Gryder is not, at this juncture, entitled to qualified immunity.

[75] R. Doc. 57-3, p. 74:15-18.  Plaintiff filed his Complaint on November 4, 2017.  R. Doc. 1.

[76] R. Doc. 62-2, p. 3, ¶ 22.

14

but the sheriff testified that "he was not apprised of these proceedings."[77] The Fifth Circuit found

that the sheriff's ignorance for nine months after termination of proceedings against Whirl was

unreasonable.[78] Further, the court noted that "[f]ailure to know of a court proceeding terminating

all charges against one held in custody is not, as a matter of law, adequate legal justification for an

unauthorized restraint."[79] While the question here is not as clear cut as that set out in *Whirl*, based

on the timeline of "clarifications" from the criminal court and the Assistant DA, Plaintiff has raised

a material issue of fact regarding when Ms. Gryder knew she had recalculated Plaintiff's release

date based on incorrect information. Accordingly, while the Court finds that Ms. Gryder is entitled

to qualified immunity for Plaintiff's over-detention from June 5, 2015 through August 17, 2016

and therefore summary judgment dismissing Plaintiff's claims against Ms. Gryder for that period

of time is appropriate, a genuine issue of material fact precludes summary judgment in favor of

Ms. Gryder for the time period of August 18, 2016 through January 13, 2017.[80]

---

[77] 407 F.2d at 785.

[78] 407 F.2d at 792 ("The sheriff, of course, must have some protection too. His duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained. We are not to be interpreted as holding that a sheriff commits an instant tort at the moment when his prisoner should have been released. However, in the present case what is or is not a reasonable time is not at issue. It may safely be said that Kern's ignorance for nine long months after the termination of all proceedings against Whirl was, as a matter of law, ignorance for an unreasonable time.").

[79] *Id.*

[80] During this five-month period, the parties dispute when Plaintiff first sent a copy of the sentencing transcript to Ms. Gryder and whether, upon notice that Plaintiff's correct release date was June 5, 2015, Ms. Gryder acted reasonably. It is undisputed that on December 5, 2016, Plaintiff sent a letter to Brenda Acklin, as well as a copy of the sentencing transcript. R. Doc. 62-1, p. 4. Ms. Gryder testified that she realized that Plaintiff should have been released in June 2015 when she received the sentencing transcript in "early December, 2016." R. Doc. 57-3, p. 78:16-22. In contrast, Plaintiff asserts that he sent the sentencing transcript to Ms. Gryder in November 2016. During the August 12, 2019 motion hearing, the parties disputed whether there was sufficient evidence to establish Plaintiff sent any information in November of 2016. It is undisputed that Plaintiff could not be released until he had an approved residence plan, that an employee with DWCC requested approval of a new residence plan for Plaintiff on December 14, 2016, and that an approved residence plan was sent to DWCC on January 3, 2017. R. Doc. 62-1, pp. 4-5. Plaintiff contends that the "residence plan was the last legal hurdle to his release," and that Ms. Gryder "is still liable for taking a full ten days to effect Mr. Thomas' release after all the barriers to his freedom had fallen away." R. Doc. 68, p. 5. Defendants point out that Plaintiff did not receive a state ID until January 11, 2017 and was released from DWCC on January 13, 2017. R. Doc. 62-1, pp. 4-5. Courts have recognized that "[t]emporarily retaining custody over an inmate who is entitled to release in order to accomplish administrative tasks incident to that release is not per se unconstitutional. However, courts recognize that inmates' due process rights may be violated if they are not released within a reasonable

## D. Plaintiff's Claim of Supervisory Liability is Dismissed

Per his Complaint, Plaintiff asserts a "pattern and practice liability" claim against Secretary LeBlanc and Warden Goodwin.[81] A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[82] "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates."[83] "A supervisory official is held to a standard of 'deliberate indifference,' which requires proof that the supervisor 'disregarded a known or obvious consequence of his action.'"[84]

"Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference."[85] "To establish that a state actor disregarded a known or obvious consequence of his actions, there must be 'actual or constructive notice' 'that a particular omission in their training program causes ... employees to violate citizens'

---

[81] time after the reasons for their detentions have ended." *Barnes v. District of Columbia*, 793 F.Supp.2d 260, 275 (D.D.C. 2011) (citing *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir.1988) ("We recognize that the administrative tasks incident to a release of a prisoner may require some time to accomplish—in this case perhaps a number of hours."); *Brass v. County of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir.2003); *Golberg v. Hennepin County*, 417 F.3d 808, 811 (8th Cir.2005)).

[81] R. Doc. 1, Count Seven. Plaintiff contends that wide-spread practices of overdetention have been allowed to exist "because Defendants declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers or agents." R. Doc. 1, ¶ 111.

[82] *Porter*, 659 F.3d at 446 (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

[83] *Id.* (quoting *Gates*, 537 F.3d at 435).

[84] *Evett v. DETNTFF*, 330 F.3d 681, 689 (quoting *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir.1997)).

[85] *Porter*, 659 F.3d at 446. As stated above, this Court previously noted that Plaintiff had asserted a federal "failure to intervene" claim against all Defendants. *See*, R. Doc. 39 & R. Doc. 1, Count Six. In order to establish such a claim, a defendant must (1) know another officer is violating an individual's constitutional rights; (2) have a reasonable opportunity to prevent the harm; and (3) choose not to act. *Whitley v. Hannah*, 726 F.3d 631, 646 (5th Cir. 2013). Plaintiff does not explain the basis for his failure to intervene claim. Instead, Plaintiff focuses on the "pattern" of over-detention.

constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'"[86]  "'A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference,' because '[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'"[87]  "Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard 'less stringent' than deliberate indifference would be employed, and 'a failure-to-train claim would result in *de facto respondeat superior* liability.'"[88]

"[P]roof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights."[89] Significantly, "[w]ithout more, the fact that an employee erred in one instance does not provide sufficient evidence to show that [a supervisor's] alleged actions in failing to train were objectively unreasonable."[90]  The Fifth Circuit has "stressed that a single incident is usually insufficient to demonstrate deliberate indifference."[91]  Generally, a plaintiff must "demonstrate 'at least a pattern of similar incidents in which the citizens were injured.'"[92]  "Prior indications cannot simply be for

---

[86] *Porter*, 659 F.3d at 447 (quoting *Connick v. Thompson*, 563 US 51, 61-62 (2011)).

[87] *Porter*, 659 F.3d at 447 (citing *Connick*)

[88] *Porter*, 659 F.3d at 447 (citing *Connick*).

[89] *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

[90] *Porter*, 659 F.2d at 448.  Further, a supervisor "cannot be held liable for unintentional oversights; particularly when the evidence indicates [the supervisor] could not have consciously believed his actions, based on the information made available to him, would lead to a violation of [Plaintiff's] constitutional rights."  *Evett*, 330 F.3d at 690.  The parties do not dispute that Plaintiff wrote a letter to Warden Goodwin regarding his release date and that Warden Goodwin forwarded the letter on to Brenda Acklin and thereafter spoke to both Ms. Acklin and Ms. Gryder regarding Plaintiff's contentions.  Accordingly, rather than being deliberately indifferent to Plaintiff's complaints, it appears that Warden Goodwin followed up regarding the issue of Plaintiff's release date with the individuals who were charged with computing Plaintiff's sentence.

[91] *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005).

[92] *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired…."[93]

Plaintiff argues that "the DOC has investigated and admitted that it has been overdetaining hundreds of inmates per month, more than sufficient to hold LeBlanc and Goodwin liable under *Monell/Hinojosa*."[94] In support of his contention that this pattern of over-detention supports a finding of liability in this case, Plaintiff relies on a 2012 study conducted by Louisiana DOC staff (referred to as the "Lean Six Sigma") wherein, per Plaintiff, it was "found that as of January 2012, the DOC had a '1446 backlog of cases to have time computed,' resulting in an average processing delay of 110 days."[95] Plaintiff further asserts that an October 2017 audit conducted into the DOC found "'DOC's process for calculating offender release dates is inconsistent, which can result in errors.'"[96] Finally, Plaintiff points to a newspaper Op-Ed wherein the Louisiana Attorney General noted "'a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison.'"[97]

---

[93] *Estate of Davis*, 406 F.3d at 383. *See also*, *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) ("A pattern requires similarity and specificity…."); *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 286 (5th Cir. 2002) ("Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights."). *See also*, *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 427 (5th Cir. 2006) (finding insufficient allegations of a pattern of constitutional violation such that district court erred in not granting motion to dismiss supervisor on grounds of qualified immunity and explaining "there is no allegation of any prior incident in which any arrestee or prisoner ever commandeered (or even attempted to commandeer) a police car, much less that any such ever resulted in any injury to another person. Nor is any other fact alleged which would tend to indicate that Chief Herrera had the deliberate indifference necessary for supervisory liability.").

[94] R. Doc. 52-1, p. 9.

[95] R. Doc. 52-1, pp. 10-11. Plaintiff contends that "[t]his establishes that 'policymakers had actual or constructive knowledge' of the problem prior to Mr. Thomas' detention." R. Doc. 52-1, p. 11.

[96] R. Doc. 52-1, p. 11.

[97] R. Doc. 52-1, p. 12.

Plaintiff asserts that despite such incompetence, "there has *not been a single example of* 'discipline or adverse employment action for DOC employees who have incorrectly computed sentences or release dates, from 2000 to the present.'"[98]

Even taking all the assertions set out by Plaintiff regarding backlogs, miscalculations, and incompetence as true, Plaintiff's over-detention does not involve such concerns.[99] While Plaintiff correctly notes that the Lean Six Sigma report reflected a backlog of 1446 cases to have time computed as of January 2012,[100] it is undisputed that Plaintiff's sentence was recalculated four times prior to the June 5, 2015 release date. Likewise, while Plaintiff correctly notes that the October 2017 audit found that the DOC's process for calculating offender release dates was inconsistent,[101] the parties agree that June 5, 2015 was Plaintiff's correct release date had his sentence been subject to time-served, good time credits, and CTRP credits; and that February 28,

---

[98] R. Doc. 52-1, p. 12 (citing LeBlanc's interrogatory responses). In a supplemental memorandum, Plaintiff cites the Court to Secretary LeBlanc's deposition testimony and asserts that "Secretary LeBlanc acknowledged that in 2017, the DOC said it was starting a training document for time computation and by early 2019 the manual was not fully completed." R. Doc. 71, p. 2. Plaintiff further points out that Secretary LeBlanc testified that he saw the audit report regarding "inconsistencies in the calculation of time that caused errors, and the DOC had no polices, procedures, or agency-wide guidance that detailed the correct way to calculate release dates." R. Doc. 71, p. 3.

[99] Plaintiff does not explain how these alleged issues regarding backlogs, miscalculations, and imcompetence can form the basis for a finding that there was a pattern of properly calculating release dates based on incorrect underlying information. Indeed, Plaintiff's reliance on evidence which he contends shows a pattern of incompetence and delay in computing sentences seems directly contrary to the actions of Ms. Gryder about which Plaintiff complains here (because Ms. Gryder did timely compute Plaintiff's sentence and did perform such computations correctly, albeit with incorrect underlying information).

[100] R. Doc. 52-10, p. 4.

[101] R. Doc. 52-11, p. 13 ("DOC does not have any policies, procedures, manuals, or standardized guidance that outlines the correct way to calculate release dates. This leads to inconsistent calculation methods. For example, we asked two DOC staff to calculate release dates on the same offender, and each staff used a different method to calculate the release date. The two results differed by 186 days."). The October 2017 audit also noted "[p]rior to releasing an offender, DOC staff review the offender's file, checking for errors and re-calculating the release date. Errors in release date computations should be caught during this review; however, an offender could be held too long if the release date was miscalculated and not caught until shortly before release." R. Doc. 52-11, p. 13. Here, the parties agree that Plaintiff's release date was calculated multiple times prior to the June 5, 2015 release date. As discussed herein, the Court finds that Plaintiff's allegations involve a calculation of his release date based on improper reliance on faulty underlying information regarding his sentence rather than a miscalculation due to a computation error or lack of consistent computation policy.

2017 was the correct release date had Plaintiff's sentence not be subject to those time reductions.[102] Accordingly, this is not a case involving a delay in Plaintiff's sentence calculation, or an error in that calculation. Instead, Plaintiff complains that in calculating his release date, Ms. Gryder improperly relied on information that was wrong.[103] Because Plaintiff has presented no evidence to support a finding that Warden Goodwin or Secretary LeBlanc were deliberately indifferent based on a pattern of sufficiently similar incidents, Defendants are entitled to summary judgment dismissing "Count Seven – Pattern and Practice Liability."[104]

### E. Injunctive Relief

Plaintiff argues that he is entitled to seek injunctive relief because the sentencing mistake of which he complains is "capable of repetition, yet evading review." "This exception to the mootness doctrine has two prongs: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that

---

[102] R. Doc. 62-1, p. 2.

[103] "It is true that there is a so-called 'single incident exception,' but it is inherently 'a narrow one, and one that we have been reluctant to expand.' 'To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation.'" *Estate of Davis*, 406 F.3d at 385-396 (internal citations omitted). *See also*, *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (same). The Fifth Circuit has "often rejected application of the single incident exception." *Cozzo*, 279 F.3d at 288 (collecting cases). Plaintiff does not argue that this exception applies here.

[104] R. Doc. 1, p. 16. During the August 12, 2019 motion hearing, the Court questioned whether Plaintiff was instead seeking to establish a pattern of administrative delay following notice that a prisoner had been over detained. Plaintiff argued that the evidence submitted in support of summary judgment shows that every part of the process is slow (including, presumably, the process of releasing an individual upon expiration of their sentence). The Court has reviewed the Lean Six Sigma report, the October 2017 audit, and "Criminal Justice Data Sharing and Notification Project (DSN) 2019" submitted by Plaintiff in support of his supervisory liability claims. R. Docs. 52-10 – 52-12. It does not appear that anything in these documents addresses administrative delay following notice that a prisoner has been over-detained. *Compare*, *Traweek*, 2019 WL 5430590, at * 11 ("Mr. Traweek alleges that the DOC's system of administrative processing, in practice, amounts to a policy of deliberate indifference. It is alleged that LeBlanc has known about the DOC's pattern of overdetention for years and yet has failed to adopt policies to correct this problem and that this failure to adopt training or disciplinary policies to address it constitutes deliberate indifference to Mr. Traweek's constitutional right to timely release. Mr. Traweek also alleges that, consistent with the known delays inherent in processing releases at DOC, it took DOC four days to even begin 'computing' Traweek's time and then another day to effect his release.").

the same complaining party would be subjected to the same action again.'"[105]  "Under the second prong, the party invoking jurisdiction must show a 'demonstrated probability' or 'reasonable expectation,' not merely a 'theoretical possibility,' that it will be subject to the same government action."[106]  Plaintiff bears the burden of proving both prongs.[107]

Defendants argue that Plaintiff has been released from prison and there is "no indication that Plaintiff intends to return to incarceration, or into a situation where he will then be held past his release date by the defendants."[108]  In opposition, Plaintiff asserts that "there is a reasonable expectation that this might happen to Mr. Thomas again" based on recidivism rates.[109]  In their reply, Defendants submit Plaintiff's deposition testimony, wherein he agrees that he has no "intention of returning to incarceration with the State of Louisiana."[110]  The Court will not assume that Plaintiff is likely to return to prison, and finds Plaintiff's argument regarding recidivism rates to be too theoretical to allow him to seek injunctive relief.  Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's request for injunctive relief.

## III.    Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment[111] is **DENIED**.

---

[105] *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

[106] *Lopez*, 617 F.3d at 340 (quoting *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010)).

[107] *Lopez*, 617 F.3d at 340.

[108] R. Doc. 57-1, pp. 25-26.

[109] R. Doc. 62, p. 9.

[110] R. Doc. 65-1, p. 106:7-11.

[111] R. Doc. 52.

**IT IS FURTHER ORDERED** that Defendants' Second Motion for Summary Judgment[112] is **GRANTED IN PART**. **IT IS HEREBY ORDERED** that Plaintiff's claims against Ms. Gryder for the time period of June 5, 2015 through August 17, 2016 are **DISMISSED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that Plaintiff's claim against Warden Goodwin and Secretary LeBlanc based on supervisory liability are **DISMISSED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that Plaintiff's claim for injunctive relief is **DISMISSED WITH PREJUDICE**.

Based on the agreement of counsel during the August 12, 2019 motion hearing,[113] **IT IS FURTHER ORDERED** that Plaintiff's claims against unidentified "Does 1-10," as well as any official capacity claims for monetary damages against Defendants, are **DISMISSED WITH PREJUDICE**.

A separate Order setting remaining pretrial deadlines and a trial date will issue.

Signed in Baton Rouge, Louisiana, on November 6, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[112] R. Doc. 57.

[113] *See*, R. Doc. 75.