## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DE'JUAN THOMAS**                                    **CIVIL ACTION NO.**

**VERSUS**                                            **17-1595-EWD**

**SALLY GRYDER, ET AL.**                              **CONSENT CASE**

### VIDEO PRE-TRIAL CONFERENCE REPORT AND ORDER

A video pre-trial conference was held in the above-captioned proceeding on Wednesday, July 22, 2020 with the following participants:

> **PRESENT**:  **Sarah Chervinsky** and **William B. Most** (Counsel for Plaintiff), appearing by video; and
>
> **Phyllis E**. **Glazer** (counsel for Defendant), appearing by video.

The purpose of the pretrial conference was to discuss the parties' Proposed Pretrial Order[1] and other issues regarding the 4-day jury trial set to begin on September 28, 2020.[2]

    1.    <u>Trial Length and Procedures</u>.

The parties confirmed that this case can be tried in 4 days.[3] Regarding the ongoing COVID-19 pandemic, the parties inquired as to the likelihood of trial being rescheduled. At this time, it is anticipated that the trial will proceed as scheduled, however, the trial date may change based on this Court's General Orders and other factors related to COVID-19.  The parties will be promptly notified if September 28 trial will not begin as scheduled.

    2.    <u>Motions in Limine</u>.

The parties discussed the motions in limine that they anticipate filing, as referenced in their Proposed Pretrial Order.[4] Plaintiff advised that he intends to file a motion in limine regarding the

---

[1] R. Doc. 102.
[2] R. Doc. 99.
[3] Counsel suggested that they may be able to try this case in less than 4 days, but the Court will keep the trial as scheduled. Once trial begins, it may be shortened, if necessary.
[4] R. Doc. 102, p. 2.

cv28aT1:00

use of and/or reference to the name and/or nature of the crimes for which he was previously convicted, during September 28 trial and/or in the presence of the jury. Defendant explained that the parties had reached an agreement to only reference the crimes by statute number (*e.g.*, La. R.S. § 14:44.1, etc.) instead of using the "names of the crimes and counts." This approach appears workable, if it is acceptable to the parties. The parties confirmed that they will confer regarding this issue prior to the filing of any motion in limine.

Defendant anticipates filing a motion in limine to exclude references to and/or the use of documents pertaining to DOC's policies, procedures, manuals, or standardized guidance on the correct way to calculate release dates, etc. ("Policies and Procedures")[5] in light of the Court's Ruling on the parties' Motions for Summary Judgment ("Ruling").[6] Plaintiff explained that these documents are relevant to punitive damages. Although the Court is not inclined to permit reference to and/or the use of these DOC Policies and Procedures documents at trial, given the "significant narrowing of claims by the Court's Ruling," the parties should file whatever motions in limine they believe are necessary, if they are unable to resolve issues to be raised after conferring with the opposing party in good faith.

3.    Timeframe at Issue and Established Facts.

The parties discussed the timeframe at issue and the established facts. The parties confirmed that, after the Court's Ruling, the time frame at issue during trial is August 17, 2016 to January 13, 2017.

Defendant advised of a concern with Established Fact No. 30 because Defendant is "not liable for all of these days."[7] Plaintiff agreed that Defendant is not liable for all 589 days of

---

[5] Defendant specifically mentioned Plaintiff's proposed Exhibit 46 (2012 Six Sigma Report) and similar documents during this discussion.
[6] R. Doc. 87.
[7] R. Doc 102, p. 9 ("[Plaintiff] was released 589 days past his legal release date.").

2

overdetention, but expressed a desire to be able to tell the jury his "whole story."[8] Additionally,

Plaintiff claimed that the total 589-day period is relevant to damages, including emotional distress,

because "the longer you are in jail when you are supposed to be out the harder and more stressful

it is." After a brief discussion, the parties were advised to confer on this issue, considering the

potential prejudicial effect of mentioning the entire 589-day period at trial.

    4.   <u>Exhibits</u>.

The parties discussed their respective exhibits.[9] Considering the earlier discussion

regarding the use of statute numbers, the Court inquired as to whether the name and/or nature of

the crimes for which Plaintiff was previously convicted will be redacted from the parties' exhibits.

Plaintiff explained his position that all references to the name and nature of the crimes, as well as

any reference to "sex offender" status, "sexual malfeasance," or "sexual battery," should be

redacted because such references are more prejudicial than probative. Defendant responded, noting

that removal of refences to "sex offender" is a different issue than what was previously discussed.

Defendant explained that the jury should hear the "full story," including why she had to take certain

steps prior to Plaintiff's release and the time it took to complete those steps, which were required

by law because of Plaintiff's sex offender status. Plaintiff suggested that the parties could use

something like "conditions upon release" when discussing the steps Defendant took. After a brief

discussion, the parties were advised to confer regarding this issue.

    Next, Plaintiff confirmed that certain exhibits were listed for impeachment purposes only.[10]

---

[8] For example, Plaintiff noted how he would like to be able to state how he was released 589 days past his legal release date during his opening statement, while simultaneously explaining that "only a small portion" of that time is at issue (*i.e.*, for which Defendant could be liable) here.

[9] R. Doc. 102, pp. 9-13.

[10] *See, e.g.,* R. Doc. 102, pp. 10-11, at Exhibit No. 35 (Deposition of Sally Gryder), Exhibit No. 36 (Deposition of Brenda Acklin), Exhibit No. 37 (Deposition of Jerry Goodwin), Exhibit No. 38 (Deposition of Jesse Jimerson), Exhibit No. 39 (Defendant's Reponses to Requests for Admission), Exhibit No. 40 (Defendant's Responses to Second Set of Interrogatories), Exhibit No. 42 (Defendant's Responses to Interrogatories with Certification), Exhibit No. 48 (Deposition of Angela Whittaker), Exhibit No. 49 (Deposition of Derek Ellis), and Exhibit No. 50 (Declaration of De'Juan Thomas). Plaintiff also advised that the exhibits were listed "in the event that any of these witnesses pass away before trial given the Covid-19 pandemic."

Finally, the parties discussed the relevancy of Plaintiff's Exhibit No. 1 (Jan. 25, 2013 – Sentence) and Exhibit No. 2 (Jan. 25, 2013 – Sentencing Transcript) given that all the information contained in those documents has already been stipulated to, and that the only issues left for trial are when Defendant received those documents and whether the steps she took after that point were reasonable. The parties advised that they do not anticipate any authenticity issues regarding the exhibits, and they agreed to confer in an effort to narrow down their lists of exhibits.

     5.    Witnesses.

The parties discussed their respective will call and may call witnesses.[11] Plaintiff advised that, at this time, he does not intend to call all his may call witnesses. The parties specifically discussed one of Plaintiff's may call witnesses, Judge Graham Bosworth, who is the Louisiana state district court judge that sentenced Plaintiff. After a brief discussion, Judge Graham Bosworth was stricken from Plaintiff's may call list for reasons explained during the conference.

     6.    Miscellaneous Issues.

The parties explained their respective positions on the possibility of settlement, and it appears that the parties would prefer to resolve this matter through trial at this time.

The parties also briefly discussed other issues, including whether Defendant is still able to get qualified immunity after the Court's Ruling and ways to move this case forward should trial be rescheduled due to COVID-19.[12]

A final pretrial conference will be set before the scheduled trial date to address any remaining issues.

Accordingly,

---

[11] R. Doc. 102, p. 13.

[12] The parties raised (1) the possibility of taking an interlocutory appeal on the issue of continuing tort/state law prescription and (2) the possibility of having a bifurcated trial on (a) liability and qualified immunity and (b) damages.

4

**IT IS ORDERED** that Judge Graham Bosworth is stricken from Plaintiff's proposed may call witness list for the reasons explained during the conference.

**IT IS FURTHER ORDERED** that a final pretrial conference is set for **Tuesday, September 15, 2020 at 10:00 a.m.** in chambers before Magistrate Judge Erin Wilder-Doomes.

**IT IS FURTHER ORDERED** that the parties shall file a proposed final pretrial order by no later than September 9, 2020, using the sample located at R. Doc. 27, pp. 5-10.  For the final pretrial order, parties should only list the witnesses and exhibits they intend to call/use.  If the parties agree they would like certain documents listed as exhibits, those documents should be stated as "Joint Exhibits."

**IT IS FURTHER ORDERED** that the parties shall confer prior to the August 10, 2020 deadline to file motions in limine to attempt to reach stipulations on any issues that may be the subject of such motions.

**IT IS FURTHER ORDERED** that the parties shall confer prior to the September 15, 2020 final pretrial conference and shall file any additional stipulations regarding the admissibility and authenticity of exhibits by no later than **September 9, 2020**.

Signed in Baton Rouge, Louisiana, on July 27, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**